United States Courts
Southern District of Texas
ENTERED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUG 1 6 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA Litigation | §<br>§<br>§<br>§ | MDL-1446 |
| THIS DOCUMENT RELATES TO: | §<br>§<br>§ | |
| H-02-1150 | §<br>§ | |
| MARK NEWBY, ET AL., | §<br>§ | |
| Plaintiffs | §<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. H-01-3624 |
| ENRON CORPORATION, ET AL., | §<br>§ | CONSOLIDATED CASES |
| Defendants | §<br>§ | |

| | | |
|---|---|---|
| JACOB BLAZ, On Behalf of Himself and All Others Similarly Situated, | §<br>§<br>§<br>§ | |
| Plaintiff | §<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. H-02-1150 |
| ROBERT A. BELFER, NORMAN P. BLAKE, JR., RICHARD B. BUY, RICHARD A, CAUSEY, RONNIE C. CHAN, JOHN H. DUNCAN, ANDREW S. FASTOW, JOE H. FOY, WENDY L. GRAMM, KEN L. HARRISON, ROBERT K. JAEDICKE, KENNETH L. LAY, CHARLES A. LEMAISTRE, JEROME J. MEYER, JEFFREY S. SKILLING, JOHN A. URQUHART, JOHN WAKEHAM, CHARLES E. WALKER, BRUCE G. WILLISON, HERBERT S. WINOKUR, JR., AND ARTHUR ANDERSEN LLP, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants | § | |

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, Clerk
By _____
                    Deputy Clerk

## MEMORANDUM AND ORDER OF DISMISSAL

Pending before the Court is Plaintiff Jacob Blaz's motion for remand (instrument #556 in H-01-3624).

Plaintiff's original petition, brought as a class action on behalf of himself and all purchasers of the publicly traded

securities of Enron Corporation from April 11, 1997 through October 15, 1998 (the proposed Class Period), alleges fraud in stock transactions in violation of Tex. Bus. & Com. Code § 27.01, and Texas common-law claims of fraudulent misrepresentation, negligent misrepresentation and conspiracy. Blaz filed the suit, Cause No. 2002-05068, in the 234th Judicial District Court, Harris County, Texas on January 30, 2002. Defendant Kenneth L. Lay was served on March 6, 2002 and removed the suit on March 30, 2002, pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998), codified at 15 U.S.C. §§ 77p (amending Securities Act of 1933) and 78bb (amending Securities Exchange Act of 1934) (West 2002).[1]  SLUSA

---

[1]    SLUSA provides for mandatory removal and dismissal of a specific kind of class action:

> (f) LIMITATIONS ON REMEDIES.--
> (1)  CLASS  ACTION  LIMITATIONS.--No covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> (B) that the defendant used or employed any manipulative  or  deceptive  device  or contrivance in connection with the purchase or sale of a covered security.
> (2)  REMOVAL  OF  COVERED  CLASS  ACTIONS.--Any covered class action brought in an State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)(A),(B) & (2) (amending Securities Exchange Act of 1934); parallel provision for amendment to 1933 Act is § 77p(b) and (c).

   A "covered security" is defined as "a security issued by an investment company that is registered or that has filed a

was enacted on November 3, 1998, immediately after the Class
Period.

Plaintiff contends that the removal was defective
because it was effected by an impermissible retroactive

---

registration statement, under the Investment Company Act of 1934."
15 U.S.C. § 77r(b)(2).  Title 15 U.S.C. § 78bb(f)(5)(B) defines a
"covered class action" as

> (i) any single lawsuit in which--
> (I) damages are sought on behalf of more than
> 50 persons or prospective class members, and
> questions of law or fact common to those
> persons or members of the prospective class,
> without reference to issues of individualized
> reliance on an alleged misstatement or
> omission, predominated over any question
> affecting only individual persons or members
> or
> (II) one or more named parties seek to recover
> damages on a representative basis on behalf of
> themselves and other unnamed parties similarly
> situated, and questions of law or fact common
> to those persons or members of the prospective
> class predominate over any questions affecting
> only individual persons or members; or
> (ii) any group of lawsuits filed in or pending
> in the same court and involving common
> questions of law or fact, in which--
> (I) damages are sought on behalf of more than
> 50 persons; and
> (II) the lawsuits are joined, consolidated, or
> otherwise proceed as a single action for any
> purpose.

15 U.S.C. § 78bb(f)(5)(B).

Thus SLUSA authorizes the removal to federal court of
all private class actions grounded in state law that are
actionable under federal securities law and that fall within
SLUSA's definitions of "covered class action" and "covered
security."  Furthermore it subjects those state-law claims to
dismissal.  15 U.S.C. § 78bb(f)(1)-(2).  See, e.g., Riley v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1341
(11th Cir. 2002); Patenaude v. Equitable Life Assurance Soc. of
U.S., 290 F.3d 1020, 1023-24 (9th Cir. 2002); Lander v. Hartford
Life & Annuity Ins. Co., 251 F.3d 101, 109-10 (2d Cir. 2001).

application of SLUSA to preempt his state law claims. <u>W.R. Huff Asset Management Cl., L.L.C. v. BT Securities Corp.</u>, 190 F. Supp. 2d 1272 (N.D. Ala. 2001)(holding that SLUSA did not apply retroactively to conduct predating its enactment even though suit was filed post-enactment and remanding case to state court). SLUSA was enacted on November 3, 1998.

Here, Defendants' alleged misconduct giving rise to the claims in member case H-02-1150 occurred just prior to SLUSA's enactment date (the Class Period is April 11, 1997 to October 15, 1998), but the suit was not filed in Texas state court or served until more than three years after the enactment.


APPLICABLE LAW

The key case in retroactivity analysis is <u>Landgraf v. USI Film Prod.</u>, 511 U.S. 244 (1994). Although in <u>Landgraf</u>, the analysis focused upon whether an amendment to the Fair Claims Act should be retroactively applied to a case already pending at the time the amendment was enacted, challenging conduct that occurred before the enactment, in <u>Hughes Aircraft v. United States ex rel. Schumer</u>, 520 U.S. 939 (1997), the Supreme Court applied the logic of <u>Landgraf</u> to a suit filed after an amendment to the Fair Claims Act was enacted, but challenging conduct that occurred before the statute's enactment. <u>W.R. Huff Asset Management</u>, 190 F. Supp.2d at 1275-76. Accordingly, because the Blaz case presents the same procedural stance as <u>Hughes Aircraft</u>, this Court applies the <u>Landgraf</u> analysis to resolve the issue before it.

Noting that aside from provisions in the Constitution that prohibit retroactivity,[2] the Supreme Court recognized that the traditional presumption against retroactivity arose because "considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly" and that "familiar considerations of fair notice, reasonable reliance, and settled expectations" should guide a court in determining whether that presumption should apply. Landgraf, 511 U.S. at 265, 270. The high court observed that deciding "when a statute operates 'retroactively' is not always a simple or mechanical task." Id. at 268. It made clear that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law [citations omitted]." Id. at 269. The critical question is "whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change

_____

[2] As examples the Court notes the ex post facto clause in the eighth amendment (prohibiting retroactive application of penal legislation), Article I, § 10, cl. 1 (prohibiting states from retroactively passing laws that "impair[] the Obligation of Contracts"), the fifth amendment's taking clause (barring legislatures and government officials from depriving private persons of vested property rights except for "public use" and upon payment of "just compensation"), Art. I. § § 9-10 (prohibiting bills of attainder by legislature), and the due process clause. 511 U.S. at 266.

in the law and the degree of connection between the operation of the new rule and a relevant past event."  <u>Id.</u> at 270.

Furthermore, in discussing retroactivity relating to various kinds of new statutes, the high court emphasized the significance of the focal point of the new law.  For example, the Court summarily cited examples to demonstrate that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."[3]  <u>Id.</u> at 274.  It observed that instead of applying "the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment," based on "the unfairness of imposing new burdens on persons after the fact," the court should "apply the law in effect at the time it renders its decision" to procedural changes to existing law, such as statutes that alter only jurisdiction.  <u>Id.</u> at 278, 270, 264.  It explained that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'"  <u>Id.</u>

The Supreme Court also pointed out, "Changes in procedural rules may often be applied in suits arising before their enactment without concerns about retroactivity."  <u>Id.</u> at 274-74 (citations omitted).  It further explained, "Because rules

---

[3] In one example, <u>Bruner v. United States</u>, 343 U.S. 112 (1952), the Supreme Court, "relying on our 'consistent[t] practice,  .  .  .  ordered an action dismissed because the jurisdictional statute under which it had been (properly) filed was subsequently repealed."  <u>Landgraf</u>, 511 U.S. at 274.

of procedure regulate secondary conduct rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive," even where the new rules "operated to a defendant's disadvantage." Id. at 275 & n.28. "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." Id. at 275. See, e.g., Adepegba v. Hammons, 103 F.3d 383 (5th Cir. 1996)(holding that the amended i.f.p. requirements of the Prison Litigation Reform Act, requiring the prepayment of fees by inmate litigants after dismissal of three actions or appeals as frivolous, could be applied retroactively to cases pending before the effective date of the statute because the consequences were matters of procedure, because there was no absolute right to pursue a civil appeal i.f.p., but only a privilege, because the rule governed secondary conduct rather than primary conduct, and because it did not impose new or additional liabilities). Nevertheless, the Supreme Court cautioned, "Of course, the mere fact that a new rule is procedural does not mean that it applies to every pending case." Id. at 275 n.29. In Lindh v. Murphy, 521 U.S. 320, 326 (1997), the Court further admonished that in determining whether a new statute operated retroactively, merely attaching a label such as "procedural" or "collateral" to the law was insufficient; the court must examine whether it actually operates in a retroactive manner.

As the threshold step in a retroactivity analysis of a statute enacted after the conduct challenged in a civil suit has occurred, Landgraf required a determination by a court "whether Congress has expressly prescribed the statute's proper [temporal] reach." Landgraf, 511 U.S. at 280.  If the congressional intent is clear, it controls and "there is no need too resort to judicial default rules." Id.  If the temporal reach of the new law is not made explicit by Congress, the Court must determine if application of the statute to the challenged conduct would result in an impermissible retroactive effect, such as "impair[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed." Id.  If the statute would have such an impermissible effect, the traditional presumption against retroactivity would apply.  Id.  Nevertheless the Supreme Court admonished, "The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." Id. at 226.

Subsequently, the Supreme Court has also made clear that "in determining a statute's temporal reach generally, our normal rules of construction apply." Lindh v. Murphy, 521 U.S. 320, 326 (1997); Graham v. Johnson, 168 F.3d 762, 781 (5th Cir. 1999), cert. denied, 529 U.S. 1097 (2000).

The only indication of the temporal scope of SLUSA is found in the "Applicability" note appended to 15 U.S.C. Sec. 77p: "The amendments made by this section shall not affect or apply to

any action commenced before and pending on the date of enactment of this Act."  PL-105-35 § 101(c).

In Hartford Casualty Ins. Co. v. F.D.I.C., 21 F.3d 696 (5th Cir. 1994), the Fifth Circuit, relying on Landgraf because the statute in dispute did not expressly indicate its temporal scope, held that a section of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(f)(4), which placed all claims involving deposit insurance within the exclusive jurisdiction of the federal Courts of Appeals, may be applied retroactively because while it changed the forum that heard deposit insurance disputes, it did not alter the substantive rights of the parties or deprive any litigant of its day in court.  Id.  at 700-01.  In the same case, the Fifth Circuit also examined 12 U.S.C. § 1821(f)(5), imposing a sixty-day time limit on requests for final determinations by the FDIC, and refused to apply it retroactively because such application would extinguish claims that were valid before the statute's enactment and deprive Hartford Insurance Company of a forum, despite the fact that Hartford had acted properly under the law existing when the claims arose and "there is no way Hartford could have foreseen" that the 60-day limitation would one day come into effect to nullify its claims.  Id. at 702.  The panel distinguished Hartford's situation if the sixty-day limitation were applied from its situation under the other provision's mere change of forum because in the latter instance the substantive rights of the parties were not impaired.  Id.  The Fifth Circuit

quoted from <u>Landgraf</u>, 511 U.S. at 275 n.29, "'[T]he mere fact that
a new rule is procedural does not mean that it applies to every
pending case.'"   <u>Id.</u>   To apply the new limitation retroactively,
while perhaps not unconstitutional, would be "manifestly unjust"
because it would "infringe upon or deprive a person of a right
that had matured'" and would impose "'unanticipated obligations .
. . upon a party without notice or an opportunity to be heard.'"
<u>Id.</u>, <u>citing</u> <u>Bradley v. School Board</u>, 416 U.S. 696, 720 (1974).


**PLAINTIFF'S AUTHORITY**

   Plaintiff's sole authority for remand based on
retroactive application of SLUSA, <u>W.R. Huff Asset Management</u>, 190
F. Supp. 2d 1272, is the only case that this Court has discovered
that directly addresses the issue of SLUSA's retroactivity.   In
that removed class action, asserting only state-law claims for
fraud and misrepresentation in connection with a sale of
securities, Judge Acker, highlighting the fact that, like the <u>Blaz</u>
case before this Court, the W.R. Huff case was not pending at the
time of SLUSA's enactment, concluded that a retroactive
application of SLUSA to it as a post-enactment suit was not
clearly and unambiguously addressed by the temporal proscription
in the "Applicability" note provision.   Therefore he questioned
whether the retroactive application of SLUSA to the suit would
have impermissible legal effects and found that it would.   190 F.
Supp.2d at 1276-77.

Judge Acker first reasoned that retroactive application of SLUSA would deny defendants their procedural class action rights despite the fact that W.R. Huff had served the other proposed class members as their representative during the Class Period, thus "running afoul of the notions of 'fair notice,' 'reasonable reliance,' and 'settled expectation.'" 190 F. Supp.2d at 1279:

> If SLUSA applies, it will deny Huff and the individuals on whose behalf it purports to act the efficient resolution of claims naturally suited to group action and will expose them to the shortcomings inherent in separate actions. Such exposure runs counter to the concepts of fair notice, reasonable reliance, and settled expectation and would attach legal consequences to complete events that form the factual basis for Huff's complaint. . . . An additional element of unfairness . . . rests on the fact that at the time of Huff's alleged discussions and transactions with defendants, Huff was acting as an investment manager and as attorney-in-fact for unnamed clients who comprise the group which would otherwise have to proceed as individuals. Huff was treated by defendants as the representative of a group. It is not unreasonable, then, for Huff and its clients to have expected that if Huff was misled while operating in its representative capacity, it could bring suit in that same capacity under then existing legal theories to remedy the wrong. If Huff was the conduit for defendants' fraud on its clients, it is hardly fair to take away, post hoc, Huff's right to seek redress for that fraud.

Id. at 1280.

Furthermore, Judge Acker reasoned that if W.R. Huff Management had brought its claims as a class action under federal law, a number of the claims would have been time-barred by the one-year statute of limitations after discovery of wrongdoing and

three-year period of repose for claims under § 10(b) of the Securities Exchange Act of 1934. <u>Id.</u> at 1280-81. He summarized. "[T]he practical effect of a retrospective application of SLUSA would be to trim down Huff's case to a virtual nothing." <u>Id.</u> at 1281. He concluded, "The reasonable expectations they had at the time of the allegedly actionable conduct cannot be reconciled with such a relinquishment of a substantive right." <u>Id</u>

Finally, drawing on the "principles of federalism and comity which recognize that federal courts are courts of limited jurisdiction," Judge Acker decided, "[W]hen Congress is ambiguous on the question of retroactivity of a preemptive federal statute, and when removability depends upon a retroactive application of that statute, the ambiguity must be resolved against removability and thus against retroactivity." <u>Id.</u>[4]

---

[4] This Court notes that Judge Acker did not address the intent of Congress in passing SLUSA to do precisely what Judge Acker found impermissible. Congress has enacted several federal statutes in the past few years to attempt to establish uniformity in the securities markets. The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1, 78u, which amended the 1933 Securities Act and the 1934 Securities Exchange Act, set out heightened pleading requirements and, for complaints under Rule 10b-5, mandated pleading of specific facts creating a strong inference of scienter for private class actions and other suits alleging securities fraud in an effort to minimize meritless lawsuits. 15 U.S.C. § 78 <u>et seq.</u> H. Conf. Rep. No. 105-803 (1998). When, as a result, plaintiffs began filing in state rather than federal court, asserting claims under state statutory or common law to avoid the PSLRA's stringent procedural and pleading hoops, Congress passed SLUSA in 1998 to close the loophole. 144 Cong. Rec. H10771 (daily ed. Oct. 13, 1998, 1998 WL 712049). SLUSA in essence made federal court the exclusive venue for securities fraud class actions meeting its definitions and ensured they would be governed exclusively by federal law. 15 U.S.C. § 77p(b)-(c). Congress' purpose in enacting the statute was to "'prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing

ARTHUR ANDERSEN, L.L.P.'S OPPOSITION

Arthur Andersen, L.L.P. ("Andersen") correctly emphasizes that SLUSA has not denied Blaz his substantive rights, i.e., the opportunity to pursue his state law claims individually against Defendants, but only precludes his ability to pursue them as a class action in state court. Andersen characterizes the statute as "purely procedural" and thus not an impermissible retroactive impediment to cases, like Blaz's, that were filed after its enactment. Johnson v. West Suburban Bank, 225 F.3d 366, 369 (3d Cir. 2000), cert. denied sub nom. Johnson v. Tele-Cash, Inc., 531 U.S. 1145 (2001); Beamon v. Brown, 125 F.3d 965, 969 (6th Cir. 1997)(class action "is merely a procedural device"). Indeed, the statute's removal provision relates only to jurisdiction and procedure. Landgraf, 511 U.S. at 274 ("Application of a new jurisdictional rule usually takes away no substantive right, but simply changes the tribunal that is to hear the case. Present law normally governs in such situations because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties."); Hughes Aircraft, 520 U.S. at 951 ("Statutes merely addressing which court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties."); State of Nebraska ex rel. Dep't of Soc. Servs. v. Bentson, 146 F.3d 676, 678 (9th Cir. 1998).

---

suit in State court, rather than Federal court.'" Korsinsky v. Salomon Smith Barney, Inc., No. 01 6085(SWK), 2002 WL 27775, *3 (S.D.N.Y. 2002) quoting H.R. Conf. Rep. No. 105-803 (1998).

Furthermore, Andersen argues that Judge Acker erroneously focused upon the allegedly fraudulent conduct of the defendants, rather than the conduct of the plaintiff in prosecuting and maintaining the suit, as the key to the retroactivity analysis. 190 F. Supp.2d at 1276. Andersen argues that since this suit was filed _after_ the enactment and, as a statute of limitations, SLUSA relates to the conduct of the plaintiff in filing the suit and maintaining the suit, but not to the defendants' conduct in allegedly defrauding investors (the substantive challenge of the suit), the application of SLUSA is prospective, not retroactive.[5] See also In re BankAmerica Corp. Sec. Litig., 95 F. Supp.2d 1044, 1046 n.2 (E.D. Miss. 2000)(in _dicta_, SLUSA "is not retroactive and does not apply to suits filed prior to November 3, 1998, the effective date of the Act"), _aff'd_, 263 F.3d 795 (8th Cir. 2001), cert. denied, 122 S.Ct. 1437 (2002). Andersen compares it to the situation underlying Lindh v. Murphy, 521 U.S. 320 (1997), involving amendments to the federal habeas corpus statute that also governed the conduct of the litigation, not the underlying conduct of the defendants.

---

[5] Defendant Lay agrees, citing Forest v. United States Postal Service, 97 F.3d 137, 139-40 (6th Cir. 1996)("A statute of limitations does not relate to the conduct of a defendant, but instead relates to plaintiff's conduct in filing the claim."); Landgraf, 511 U.S. at 275 ("the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive"); Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 168 F. Supp.2d 1352, 1356 (M.D. Fla. 2001)("SLUSA bars a specific form of action based on a specific set of facts, namely a class action arising under the enumerated circumstances described in SLUSA.  The operative language in SLUSA poses no bar to pursuit of individual actions regarding securities in state courts.").

Furthermore, in determining the temporal reach of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 (1996) in <u>Lindh</u>, Andersen observes that the Supreme Court drew a "negative inference" from a provision in chapter 54, applicable only to capital cases, which stated that amendments to capital-case chapter "shall apply to cases pending on or after the date of enactment of this Act," 521 U.S. at 327; the Supreme Court unanimously construed this provision to mean that amendments to the chapter (153), dealing with habeas proceedings generally, applied "to the general run of habeas cases only when those cases had been filed after the date of the Act." <u>Id.</u> 329 ("Nothing . . . but a different intent explains the different treatment"), 336, 344-45 (Rehnquist, C.J. dissenting). Similarly, Andersen reads the Applicability note in SLUSA to negatively imply that SLUSA does apply to actions commenced after the date it was enacted, which would include Blaz's suit.

Andersen also urges that the fact that Blaz's suit "is now subject to dismissal under SLUSA results from his own choice to bring a class action rather than an individual act." Moreover, even though Blaz has contended that if his motion to remand is denied, "the Class would thus be precluded from seeking any relief in any forum," Andersen answers that because no class has been certified, the dismissal is not binding on absent putative class members, who, like Blaz, can also bring individual state-law actions.

Blaz also argues that if SLUSA extinguishes his right to pursue a class action, he has been denied procedural due process. Andersen responds by quoting McMurtray v. Holladay, 11 F.3d 499, 504 (5th Cir. 1993)(citing Be-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915)(Holmes, J.)): "The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due."

Andersen also distinguishes the facts in Blaz from those in W.R. Asset Management, in that Judge Acker found W.R. Huff was "the conduit for defendants' [alleged] fraud on [the plaintiff's] clients" and therefore it was particularly appropriate that W.R. Huff should be allowed to act as a class representative for these clients. Here, in contrast, Blaz asserts generic claims on behalf of all purchasers of Enron's publicly traded securities from April 11, 1997 through October 15, 1998.

Finally, Andersen contends, if principles of retroactivity barred application of SLUSA to pending cases, the "Applicability" note to 15 U.S.C. § 77p ("shall not affect or apply to any action commenced before and pending on the date of enactment to this Act") would merely be surplusage in violation of the principles of statutory construction. North Star Steel Co. v. Crown Cork & Seal Co., 515 U.S. 29, 34 (1995)("it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with our precedents and that it expects its

enactments to be interpreted in conformity with them");
Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562
(1990)(Supreme Court cases "express a deep reluctance to interpret
a statutory provision so as to render superfluous other provisions
in the same enactment.").

KENNETH L. LAY'S OPPOSITION

Plaintiff has asserted, "[I]t is likely that Congress
never contemplated the effect of SLUSA on an action like the one at
bar, and it is certain that Congress did not specifically intend
SLUSA to preclude such an action."   In addition to joining in the
arguments of Arthur Andersen, Defendant Lay has pointed out that
SLUSA's legislative history reveals that Congress was aware of the
legal effect of the short federal limitations period for § 10(b)
claims and intended that application of SLUSA preemption would
time-bar a class action such as Blaz's because that very argument
was made by Senators Sarbanes, Bryan and Johnson.   In passing
SLUSA, Congress rejected their criticism of the federal limitations
period, quoted here:

The overly broad definition of "class action"[6]

---

[6] Senators Sarbanes, Bryan and Johnson criticized the
expanded definition of "class action" under SLUSA, which

may include State court actions brought by
separate individual investors, or by groups of
public investors such as school districts or
local governments. They risk being dragged
into Federal court against their will,
potentially depriving them of more favorable
State statutes of limitations, pleading
standards, joint and several liability, and so

leads directly to another of the bill's flaws. The Federal statute of limitations, which the SEC considers unduly short, will now apply in an unfair manner to State cases as well. Cases that were timely filed under State statutes of limitations may now be removed to Federal court and dismissed under the shorter Federal statute of limitations. . . . Since most States have a statute of limitations longer than the Federal time period, it is likely that most investors will have to satisfy a shorter statute of limitations. In other words, investors who filed timely lawsuits under State law may find their lawsuits dismissed for failure to meet a shorter time requirement that they could not have known would be applied to them.

S. Rep., No. 105-182, 1998 WL 226714, *20-21 (1998)(Additional

Views of Senators Sarbanes, Bryan and Johnson).

---

on. . . . The new [provisions] include as a class action any group of lawsuits in which damages are sought on behalf of more than 50 persons, if those lawsuits are pending in the same court, involve common questions of law or fact, and have been consolidated as a single action for any purpose. Even if the lawsuits are brought by separate lawyers, without coordination, and common questions do not predominate, they may qualify as a class action and thus be preempted. So, if an individual investor chooses to bring his own lawsuit in State court, to bear the expenses of litigation himself in order to avoid the provisions of the Litigation Reform Act, he can be forced into Federal court and made to abide by the Federal rules if 50 other investors each make the same decision. Indeed, the Bill provides an incentive for defendants to collude with parties to ensure that the preemption threshold is reached. Such a result does not merely end abuses associated with class action lawsuits, it deprives investors of their remedies.

S. Rep., No. 105-182, 1998 WL 226714, *19-20 (1998)("Additional Views of Senators Sarbanes, Bryan and Johnson").

**COURT'S RULING**

This Court disagrees with Judge Acker's conclusion that SLUSA may not be retroactively applied.

The Court does agree that the statute does not explicitly and clearly indicate its temporal scope. While Andersen's negative inference argument to construe the Applicability note is interesting, the Court does not find it fully persuasive because it appears to be a forced reading of what is merely a note to the statute, rather than part of its text or definition section.

Because the Court fails to find unambiguous intent of Congress that this statute may be applied to a post-enactment lawsuit challenging pre-enactment conduct, the Court utilizes the Landgraf judicial default rules and inquires whether SLUSA "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280. After considering the issue, this Court concludes that application of SLUSA to this suit is not impermissibly retroactive.

A class action is a procedural device for aggregation of claims in order to "reduce or eliminate a multiplicity of suits." 3B James William Moore, et al., Moore's Practice par. 23.03 (2d ed. 1980). There is no absolute right to bring a suit as a class action; "[t]he decision to certify [a class] is within the broad discretion of the court . . . exercised within the framework of rule 23." Castano v. American Tobacco Co., 84 F.3d 734, 740 (5ᵗʰ Cir. 1993). A plaintiff must meet standing requirements and the

prerequisites of Fed. Rule of Civil Procedure 23(a) and (b)(1), (b)(2) or (b)(3), or its state counterpart, Texas Rule of Civil Procedure 42. "The procedural device of a Rule 23(b)(3) action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve economies of time, effort, and expense." Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1196 (6th Cir. 1988). Because the Texas rule is "patterned after Federal Rule of Civil Procedure 23 . . ., federal decisions and authorities interpreting current federal class action requirements are persuasive authority." Southwestern Refining Co., Inc. v. Bernal, 22 S.W.3d 425, 439 (Tex. 2000).

Plaintiff contends that he was deprived of his right to bring a class action in Texas state court based on state-law for defendants' alleged misconduct regarding Enron securities. In Southwestern Refining, the plaintiffs argued that denying them class action treatment in essence constituted "denial of legal redress for many of the . . . plaintiffs, because many of their claims are simply too small to justify the cost of individual litigation." 22 S.W.3d at 438. The Texas Supreme Court made clear that "'there is no right to litigate a claim as a class action.'" Id. at 439, quoting Sun Coast Resources, Inc. v. Cooper, 967 S.W.2d 525, 529 (Tex. App.--Houston [1st Dist.] 1998, pet. dism'd w.o.j.). The Texas Supreme Court emphasized,

> The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. It is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites

> to recovery under a given tort.   Procedural
> devices may "not be construed  to enlarge or
> diminish any substantive rights or obligations
> of any parties to any civil action."  Tex. R.
> Civ. P. 815 . . . .

Id. at 437.

Blaz has not lost his right to pursue his claims individually in Texas state court.  Thus he still has a tribunal and may have his day in court to pursue a just resolution of his claims.  Hartford Ins., 21 F.3d 696.

Moreover, the Court concludes there is no manifest injustice in the legal effect of SLUSA in denying him the opportunity at this point to pursue his claims on a class basis in federal court because the federal limitations period is shorter than that applicable to Texas' fraud claims.  This Court would point out that the Supreme Court had long before handed down its ruling in Lampf, Pleva, Lipkind, Prupis & Pettigrew v. Gilbertson, 501 U.S. 350, 364 (1991),[7] holding that the Securities Exchange Act of 1934 established a uniform rule that "[l]itigation instituted pursuant to § 10(b) and Rule 10b-5 must be commenced within one year after discovery of the facts constituting the violation and within three years after the violation."   Furthermore, when SLUSA was enacted on November 3, 1998, it gave notice to Plaintiff that the procedural device of a class action involving securities claims under state law would be eliminated.  At that time Blaz could still

---

[7] Before Lampf, Texas applied the four-year statute of limitations applicable to fraud actions to § 10b claims filed in this state.  In re Sioux, Ltd., Sec. Litig. v. Coopers & Lybrand, 914 F.2d 61, 64 (5th Cir. 1990).

have filed a timely class action in federal court under federal law, but he chose to wait until 2002 to file suit and serve a defendant in state court, i.e., until his federal statute of limitations under Sec. 10(b) had expired.  Cf. Hartford Casualty, 21 F.3d 696.  Thus Blaz's own inaction denied him the opportunity to pursue his claims by means of a class action.

Moreover SLUSA exemplifies a rule of procedure that regulates secondary rather than primary conduct, the plaintiff's filing and prosecution of the litigation, as opposed to the defendant's allegedly unlawful conduct.  Liability under the statute is based on the same kind of activities by a defendant as existed before SLUSA's enactment.  What SLUSA eliminates is a state-court forum for class actions arising from securities violations under state law pursuant to Congress' right, under the Supremacy Clause, to impose uniform and stringent pleading standards in such suits in an effort to eliminate abusive litigation and to prevent plaintiffs from evading the protections of federal law.  The Supreme Court has a practice of "regularly appl[ying] intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."  Landgraf, 511 U.S. at 274.

Thus, give the fact SLUSA's new provisions are procedural and did not impair the substantive right of Blaz or any of the prospective class members to pursue their claims or deprive them of

a day in court, nor completely deny their access to court, the Court sees to impediment in applying the law in effect at the time Blaz filed his suit, i.e., SLUSA.

Accordingly, for these reasons, the Court

ORDERS that Plaintiff's motion to remand is DENIED. Furthermore, because Blaz has asserted only class claims based on state law that are preempted by SLUSA, pursuant to 15 U.S.C. Sec. 78bb(f)(1)(B)(2), the Court

ORDERS that Member Case No. H-02-1150 is hereby SEERED from H-01-3624, that Blaz's state-law class claims are DISMISSED with prejudice, and that H-02-1150 is CLOSED.

**SIGNED** at Houston, Texas, this 15th day of August, 2002.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE