IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | § § § | MDL 1446 |

| | | |
|---|---|---|
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 AND CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |

| | | |
|---|---|---|
| STATE OF ARKANSAS TEACHER RETIREMENT SYSTEM, et al., | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-0774 |
| MERRILL LYNCH & CO., et al., | § § | |
| Defendants. | § | |

## OPINION AND ORDER OF REMAND

H-05-0774 consists of four claims, asserted specifically and only against the Merrill Lynch Defendants[1] for "primary wrongdoing in connection with the marketing and placement of investments in LJM2" and "seeking damages solely based upon Merrill Lynch's activities relating to the sale to Plaintiffs of partnership interests in LJM2."[2]  #12 at 3.  These claims were

---

[1] The "Merrill Lynch Defendants" are Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Capital Corp., Merrill Lynch Capital Services, Inc., and ML IBK Positions, Inc., collectively referred to as "Merrill Lynch."

[2] Plaintiffs have recently filed a motion for expedited consideration of their motion to remand (#72).  Although that motion is not ripe, this opinion moots the motion.

filed as part of a larger action in the 193rd Judicial District Court of Dallas County, Texas on July 16, 2004, served on each defendant on or after August 1, 2004, and removed on August 30, 2004 on "related to" bankruptcy jurisdiction,[3] pursuant to 28

---

Also pending is Defendants' motion to dismiss Plaintiffs' amended complaint (#27). Because the motion to remand determines whether this Court has jurisdiction, it addresses that motion first.

[3] In this action Merrill Lynch Defendants state that the claims against them "relate to" the Enron bankruptcy case before Judge Arthur Gonzalez in the United States Bankruptcy Court for the Southern District of New York because Merrill Lynch has potential state statutory and common law rights of indemnity and/or contribution against some of Enron's directors and officers relating to their conduct regarding the LJM2 Limited Partnership and based on Enron's director and officer ("D&O") insurance policies covering actions of these parties. Arguing that the policies are assets of the debtor's estate, in their opposition to the motion to remand (#20 at 14) they maintain that the "critical link to the Enron bankruptcy arises for two reasons: first, because the Enron officers may have rights to proceeds of Enron's directors and officers liability policies . . . , which are assets of the Enron estate; and second, because the Enron officers may, in turn, have claims for indemnification from the Enron estate." In their reply (#40), Plaintiffs object strenuously that the only ground for removal stated in the Notice of removal was Merrill Lynch's potential claims for indemnification or contribution from Enron's officers, who in turn would seek to recover from Enron and Enron's D&O insurance policies. They complain that now Merrill Lynch improperly and untimely seeks to assert two new grounds for removal, i.e., (1) direct contribution claims against Enron based on a proof of claim filed post confirmation in October 2004 and (2) jurisdiction because the claims here are "related to" LJM2's bankruptcy proceedings. *Wormley v. Southern Pacific Transp. Co.*, 863 F. Supp. 382, 386 (E.D. Tex. 1994)("a removing party may not bring up a [*sic*] entirely new allegation of jurisdiction after the thirty day amendment period."); *Zaini v. Shell Oil Co.*, 853 F. Supp. 960, 964 n.2 (S.D. Tex. 1994)(28 U.S.C. §1653 "does not allow amendments to the notice of removal to add wholly new grounds for removal or to add missing allegations of jurisdiction"); *Woodlands II on the Creek Homeowners Ass'n v. City Savings & Loan Ass'n*, 703 F. Supp. 604, 608 (N.D. Tex. 1989)(after 30-day amendment period expires, "the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds many not be

<u>U.S.C.   §§</u>   1334(b),   1446,   and   1452[4]
added and missing allegations may not be furnished"(quoting 14[C]
Wright & Miller, *Federal Practice and Procedure* [Juris 3d] § 3733
at 537-38 [1998 & Supp. 2005]).

     Courts in the Second Circuit, whose law this Court has
concluded controls the "related to" bankruptcy jurisdiction issues
in this litigation, appear to be less strict.  *See, e.g., Arancio
v. Prudential Insurance Company of America*, 247 F. Supp.2d 333,
337 (S.D.N.Y. 2002)("A notice of removal may not be untimely
amended to add a 'new avenue of jurisdiction.' . . . Although a
removing party may be given leave to cure a defective ground for
removal under 28 U.S.C. § 1563 barring 'a total absence of
jurisdictional foundations,' . . . such amendments are in the
court's discretion and intended to preserve jurisdiction where it
exists but was *defectively stated.*"); *Wyant v. Nat'l Railroad
Passenger Corp.*, 881 F. Supp. 919, 924-25 (S.D.N.Y. 1995), citing
the following cases:  *Stuart v. Adelphi University*, No. 94 CIV
4698 (LMM), 1994 WL 455181, *1 (S.D.N.Y. Aug. 19, 1994)(Although
"a court has discretion to permit a defendant to amend its notice
of removal" after the statutory thirty-day period, "[c]ourts
generally agree that such leave should be given only [where] the
proposed amendments are technical in nature or merely serve to
clarify what was contained in the original notice for removal, but
not when the proposed amendment aims to remedy a fundamental
defect in the original notice of removal or attempts to add a new
ground for removal"); *In re CBS, Inc.*, 762 F. Supp. 71, 73
(S.D.N.Y. 1991)(A petition for removal "may be amended to set
forth more specifically grounds for removal which were imperfectly
stated in the original petition.  The prior decisions have made a
distinction between an 'imperfect' or 'defective' allegation and
a wholly missing allegation, which cannot be supplied by amendment
after the 30-day period has run."); *Ryan v. Dow Chem. Co.*, 781 F.
Supp. 934, 939 (E.D.N.Y. 1992)("As applied to removal petitions,
[28 U.S.C. § 1653] allows parties to clarify pleadings after
filing.  It does not sanction the addition of new substantive
allegations.")

     The Court finds that unlike attempting to amend to add
a new ground under a new statute or a claim based on diversity as
opposed to federal question jurisdiction, it is not clear whether
a modification amplifying the factual allegations supporting
"related to" bankruptcy jurisdiction based on direct claims for
indemnity and contribution against Enron in the Enron bankruptcy
proceeding would constitute a "clarification" of an imperfect or
defective notice in contrast to a substantive change of a ground
for removal.  The Court finds the notice of removal adequate to
permit reliance on these new but intertwined allegations that its
claims are "related to" Enron's bankruptcy case.  On the other
hand, the Court finds that allegations that the claims against
Merrill Lynch relate to LJM2's bankruptcy are substantially
different and should not be allowed to establish jurisdiction over
this suit.

and Rule 9027, to the United States Bankruptcy Court for the
Northern District of Texas, Dallas Division,[5] and then transferred
to this Court by the Judicial Panel on Multidistrict Litigation
for coordination with MDL 1446.  Pending before the Court is
Plaintiffs' motion for remand (instrument #12) of the four claims
against Merrill Lynch Defendants.

       As a group, Defendants in the state court suit before
it was divided are financial institutions charged with providing
critical assistance to various frauds perpetrated by LJM2 by
committing equity capital and or lending money to LJM2 with
knowledge of its allegedly fraudulent and manipulative purpose.
Plaintiffs are investors in and limited partners of the LJM2
Limited Partnership.  Specifically against the removing Merrill
Lynch, which served as a placement agent for some of the limited
partnership interests in LJM2 sold to investors, Plaintiffs assert
as their First, Second, Third and Fourth Claims for Relief,[6]

---

       [4] Section 1452 ("A party may remove any claim or cause
of action . . . to the district court where such civil action is
pending, if such district court has jurisdiction of such claim or
cause of action under section 1334 of this title . . . .") permits
removal of only some claims, leaving the remainder for litigation
in the other forum.  *In re Northwood Flavors, Inc.*, 202 B.R. 63,
67 (Bankr. W.D. Pa. 1996); *Johndrow v. General Motors Corp.*, 286
B.R. 133, 134 (Bankr. E.D. Mo. 2002); *In re Princess Louise Corp.*,
77 B.R. 766, 771 (C.D. Cal. 1987).  The Original Petition asserted
a total of nine Claims for Relief.  Merrill Lynch removed only the
placement claims because, according to it, only those claims
against Merrill Lynch are "related to" the Enron bankruptcy case.

       [5] Designated Adversary Proceeding 04-3511-SAF.  *See* #10
at 3, Stipulation and Agreed Scheduling Order.

       [6] The First, Second, and Third Claims for Relief are
alleged solely against Merrill Lynch.  The Fourth Claim is against
Merrill Lynch, ML/LJM2, and the "Investing Banks."  Merrill Lynch

solely state-law claims under the Texas Securities Act (Article 581-33), and common law fraud, negligent misrepresentation, and breach of fiduciary duty ("the Placement Claims").

## Plaintiffs' Motion to Remand

Plaintiffs' motion to remand notes that their allegations arise from events that occurred before Enron filed its petition for bankruptcy on December 2, 2001.  As the crux of Plaintiffs' motion, on July 15, 2004, the day before the state court suit was filed and approximately six weeks before the removal was effected, the Enron Bankruptcy Court confirmed Enron's reorganization plan.  Confirmation Order and Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code and Related Relief, Exs. G and H to Ng Declaration, #12.  Therefore, Plaintiffs insist, any claims against directors and officers have been discharged pursuant to Section 42.3 ("Discharge of Debtors") of the reorganization plan.  Moreover, according to Section 34.5 of the plan, "For purposes of the Plan, the obligations of the Debtors to indemnify and reimburse its directors and officers that were directors or officers, respectively, on or prior to the Petition Date shall be treated as Section 510 Subordinated Claims," which, in turn, the Plan states "shall receive no distribution."  Plan, § 17.  Thus, argue Plaintiffs, because all of the Enron officers against whom Merrill Lynch might have contribution or

---

removed only that part of the Fourth Claim against Merrill Lynch, and not any against the other "Investing Banks."

indemnification claims, particularly Andrew Fastow and Michael Kopper, were officers on or before the petition date and left Enron before that date, any claims against them have been subordinated and discharged without distribution under Section 34.5 of the Enron reorganization plan  and therefore would have no impact on the bankruptcy estate.  *See also* 11 U.S.C. § 502(e)(1)(disallowing claims that are "contingent" at the time of allowance or disallowance).  The reorganization plan discharged all claims for contribution and indemnification, regardless of whether a proof of claim was filed or whether the claim is an Allowed Claim.

In sum, urge Plaintiffs the removed action would have no cognizable effect on the bankruptcy estate:  the state court suit is not brought against Enron or any affiliate, officer or director of Enron, does not involve directly or indirectly any property, rights, obligations of Enron, arose out of transactions occurring before Enron filed its petition for bankruptcy on December 2, 2001, asserts claims only under state law, and does not meet the requirements for diversity jurisdiction.  Moreover, any contribution or indemnity claim by Merrill Lynch against Enron would be disallowed under 11 U.S.C. § 502(e)(1) and by section 42.3 of the confirmed plan of reorganization.

Furthermore, Plaintiffs insist, Enron's principal D&O insurance policy[7] would not cover any claims against Fastow or

_____

[7] Policy No. D0079A1A98, issued by Associated Electric & Gas Insurance Services Ltd. ("AEGIS Policy") is Ex. I to Ng Decl., #12.

Kopper, who have both pled guilty to criminal wrongdoing, #12, Ng. Decl., Exs. A-E.  The AEGIS Policy contains express provisions excluding from recovery any claims by directors and officers that were brought about by dishonesty, fraud, or malicious act or omission of such insured if established by final adjudication. AEGIS Policy at 5-6.[8]  Moreover III(B)(1) of the AEGIS Policy excludes coverage "based upon . . . such DIRECTOR or OFFICER having gained any personal profit, advantage or remuneration to which such DIRECTOR or OFFICER was not legally entitled if a judgment or other final adjudication adverse to such DIRECTOR or OFFICER established that he in fact gained such personal profit, advantage, or remuneration."

The Court would point out that these arguments by Plaintiffs lack merit because these exemptions by their express language are limited to criminal litigation resulting in final judgment:  there must be a "final adjudication" by a judge finding the insureds committed or attempted acts of dishonesty and fraud and that the officer gained personal profit to preclude coverage.

---

[8] Section III(B)(3) of the AEGIS Policy (Ex. 21 at 5-6 to #12) provides as an exclusion to coverage,

> The INSURER shall not be liable to make any payment for ULTIMATE NET LOSS arising from any CLAIMS(S) made against any DIRECTOR or OFFICER:  . . . brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of such DIRECTOR or OFFICER if a final adjudication establishes that acts of active and deliberate dishonesty were committed or attempted with actual dishonest purpose and intent and were material to the cause of action so adjudicated . . . .

No final adjudication has been made in the against the former Enron officers whose alleged wrongdoing is asserted in the petition.

Alternatively Plaintiffs contend that because the AEGIS Policy only covers actions of directors and officers "while acting in their respective capacity as DIRECTORS or OFFICERS" of Enron, the claims here should be made against the D&O policies of LJM2 because Fastow and Kopper were acting in their capacity as officers of LJM2.[9]

Plaintiffs also argue that damages for contribution and indemnity are not available for the type of claims that were removed because they are not claims asserting Merrill Lynch's joint wrongdoing with Enron or LJM2 officials; Plaintiffs' claims that were against Merrill Lynch for joint wrongdoing with or aiding and abetting these officials[10] were not removed with the four comprising this suit.  Plaintiffs point out that only one paragraph in the Original Petition (¶ 382) relates to a claim for contribution and indemnity that was removed to this Court, while

_____

[9] LJM2 is also in bankruptcy.  Plaintiffs represent that its D&O policies are referenced in Section 8.4 of LJM2's First Amended Plan of Reorganization.   The AEGIS Policy at III(I) excludes coverage for claims for which "any other policy or policies also afford(s) coverage in whole or in part."

[10] *See* Original Petition, #12, Ex. J, Claims Four as to all Defendants other than Merrill Lynch, Six (conspiracy), and Seven through Nine (aiding and abetting).   These claims were removed  on the grounds that they related to LJM2's bankruptcy, on the same date as the four comprising the instant suit (August 30, 2004), and assigned a different adversary proceeding number (04-3525-SAF) by the Dallas Bankruptcy Court.

nineteen other cited paragraphs relate to claims in the petition that were not removed as part of this action.

The Court finds this argument unpersuasive. Paragraph 382 of the Original Petition, expressly identified as relating to Claim One, although vague, does address Merrill Lynch's involvement with other parties:

> The provisions of the Texas Securities Act are applicable as here is a substantial nexus between Merrill Lynch's conduct with respect to the false statements and the State of Texas.  Many of the false statements were prepared in Texas by Merrill Lynch' Dallas and Houston offices.  In addition, Enron, the General Partner, LJM2, Fastow, Kopper, Causey and Glisan were all based in Texas and prepared and disseminated fraudulent statements from Texas with the assistance of Merrill Lynch.

Moreover, although no officer is named as a defendant, there are factual allegations in the four claims in the Original Petition against Andrew Fastow (¶¶ 74, 77, 81, 92, 93, 94, 96, 97, 98, 102, 103, 106, 108, 113, 114, 115, 117, 118, 119, 127, 132, 133, 139, 140, 141), Kenneth Lay (¶ 77, 80),  Jeffrey Skilling (¶ 80, 97), Michael Kopper (#92, 102, 103, 106, 108, 113, 114, 115, 117, 118, 119), Richard Causey (¶ 97, 175, 176, 177, 178), Jeff McMahon (¶¶ 124, 147, 148), and Daniel Boyle (¶ 162).  Also, because corporations and other entities, including Enron and LJM2, can only act through their agents, claims must involve actions by individual officers.

Plaintiffs generally contend that "the speculative and unexplained possibility of indemnification and contribution claims simply cannot confer federal jurisdiction in the face of the strong

presumption against divesting state courts of jurisdiction.  This Court has previously ruled otherwise under New York law.[11]

Plaintiffs urge that if "related to" jurisdiction is found by the Court to exist here, either mandatory or discretionary abstention or remand is appropriate.[12]

### Defendants' Opposition

In opposition to the motion to remand, Merrill Lynch emphasizes that there is substantial factual overlay between allegations in this suit and those in MDL 1446.[13]  It argues that the Placement Claims against it are legally and factually related to issues in the Enron bankruptcy case.  Furthermore, it maintains that there is "related to" bankruptcy jurisdiction based on its potential claims for contribution and indemnity against former Enron officers covered by the Enron D&O policies, as this Court found in actions earlier removed or transferred to this Court. It points to earlier rulings by Judge Gonzalez and this Court that

---

[11]  Plaintiffs also argue that removing Merrill Lynch Defendants have not met the unanimity requirement for removal under § 1452.  This Court has previously ruled that unanimity is not required for such removals.

[12]  This Court notes that after years of the majority of the Second Circuit's lower courts' ruling otherwise, the Second Circuit has recently held that mandatory abstention under 28 U.S.C. § 1334(c)(2) does apply to actions removed from state court.  *Mt. Mckinley Ins. Co. v. Corning Co.*, 399 F.3d 436, 446-47 (2d Cir. 2005).

[13]  The Fifth Circuit has ruled that the mere existence of common facts and circumstances in a bankruptcy proceeding and a separate action does not create "related to" bankruptcy jurisdiction, nor can judicial economy suffice to exercise jurisdiction where the suit is otherwise unrelated to the bankruptcy proceeding.  *In re Zale Corp.*, 62 F.3d 746, 753-54 (5th Cir. 1995); *In re Canion*, 196 F.3d 579, 585 & n.20 (5th Cir. 1999).

the D&O policies are assets of Enron's estate.  Merrill Lynch
further contends that although Fastow and Kopper pled guilty, they
did not plead guilty in connection with their conduct relating to
any aspect of LJM2; therefore, urges Merrill Lynch, the claims
against them for contribution and indemnity would not be precluded
by the policies' criminal conduct exclusion.[14]  Moreover, Merrill
Lynch argues that it might have contribution and indemnity claims
against other former Enron officers who have not pled guilty, such
as Jeffrey Skilling.  While Plaintiffs argue that Merrill Lynch's
contribution and indemnity claims would be based on the conduct of
Enron officers "while acting in the capacity as officers of LJM2,"
and thus are related to LJM2 policies, Merrill Lynch disagrees;
its claims would include the conduct of Enron employees acting as
Enron employees before LJM2 was formed, the relevant time for
placement agent claims.  Moreover, Fastow[15] filled a dual role as
officer of both entities for a period of time, and Plaintiffs have
alleged conduct by him and others in their capacities as Enron
officers.  Thus the Enron policies would be implicated by their
conduct.  Also the LJM2 policies would not cover Skilling, who was
never an officer of that entity, not to mention other named former
Enron officers.

    Nevertheless, to support the contingent contribution and
indemnity claims, Merrill Lynch improperly relies on an Amended

---

[14] The Court observes that the Original Petition, at ¶¶
3, 65-67,  and the Amended Complaint, at ¶¶ 3, 66-68, assert the
opposite.

[15] As did Kopper, according to the pleadings at ¶ 2.

Complaint (#13), filed by Plaintiffs while the case was in the Bankruptcy Court of the Northern District of Texas, after the removal. Citing paragraphs, Merrill Lynch asserts that the Amended Complaint "makes it apparent that numerous parties were involved in the formation and marketing of LJM2. Plaintiffs allege that Merrill Lynch and the other Defendants caused their losses by taking part in a large fraud concocted by Enron and Enron employees." #20 at 16. They insist that these allegations in the Second Amended Complaint give "rise to several bases for potential contribution or indemnity claims against former Enron officers and directors" under the Texas Securities Act and the Texas Civil Practice and Remedies Code, maintains Merrill Lynch. #20 at 17.

Jurisdiction is determined at the time of removal and the right to remove depends on the plaintiff's pleading at the time of petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)(removal jurisdiction is determined on the basis of claims in state court complaint at the time of removal); *Vera v. Saks & Co.*, 335 F.3d 109, 116 & n.2 (2d Cir. 2003)(Defendant's right to remove a case to federal court is generally evaluated at the time the removal notice is filed). The same is true for removals under the much broader grant of "related to" bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 1452(a).[16]

---

[16] As noted by the Second Circuit in *WorldCom*,

When Congress enacted Section 1452(a) . . . "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that

*California Public Employees' Retirement System v. WorldCom, Inc.*,
368 F.3d 86, 93 (2d Cir. 2004)("jurisdiction is established based
on the facts at the time of removal"), *cert. denied*, 125 S. Ct. 862
(2005).   In this suit therefore the Original Petition is the
governing pleading and the facts as they existed at the the time
of removal are examined for purposes of determining the existence
of federal subject matter jurisdiction.   In light of the expansive

----

they might deal efficiently and expeditiously
with *all* matters connected with the
bankruptcy estate." *Celotex Corp. v.
Edwards*, 514 U.S. 300, 308 . . . (1995). . .
.   Therefore, Congress crafted Section
1452(a) to grant comprehensive jurisdiction
to allow removal in a broad array of
situations.   First, unlike Section 1441(a),
which authorizes *defendants* to remove, the
bankruptcy removal statute authorizes *any*
"party," including plaintiffs, to remove. . .
.   Second, because any one "party" can remove
under Section 1452(a), removal under that
provision, unlike removal under Section
1441(a), does not require the unanimous
consent of the defendants.   .   .   .   Third,
whereas the general removal statute, §
1441(a), contemplates removal only from state
court, there is no such limitation in Section
1452(a).

368 F.3d at 103 (finding "related to" bankruptcy jurisdiction
where proceedings against officers of the debtor could exhaust the
limits of the D&O insurance policies and give rise to claims
against WorldCom for contribution or indemnity).   In another
opinion, Judge Cotes further observed, "[R]elated to" jurisdiction
may extend more broadly when it concerns a reorganization under
Chapter 11 as opposed to a liquidation under Chapter 7." *In re
WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 317 (S.D.N.Y.
2003)(*citing Celotex*, 514 U.S. at 308.).   Moreover, "[i]n
determining whether potential claims by third party defendants
against the debtor for either indemnification or contribution give
rise to 'related to' jurisdiction over litigation to which the
debtor is not a party, courts in this circuit . . . have generally
found jurisdiction where there is a 'reasonable' legal basis for
the claim. [citations omitted]." *Id.* at 318.

scope of "related to" bankruptcy jurisdiction under § 1452(a), where the debtor has an obligation to indemnify a non-debtor defendant, a plaintiff's claim against that non-debtor defendant is "related to" the bankruptcy because it could have a conceivable effect on the debtor's estate. *In re River Center Holdings, LLC*, 288 BR 59, 65 (S.D.N.Y. 2003)("[E]ven if the obligation is not contractual and absolute, 'related to bankruptcy jurisdiction exists if the disputed or conditional indemnity claim has a 'reasonable legal basis.'"); *Tow v. Credit Suisse First Boston Corp.*, No. CIVA3:04CV560(CFD), 2004 WL 1660576, *2 (D. Conn. July 20, 2004). Enron had such an obligation to indemnify its officers and directors under the contract, state statute and common law, and since it was unable to do so, Enron's D&O policies could be triggered and thus have a conceivable effect on Enron's bankruptcy estate. Moreover, a notice of removal need only provide a short plain statement of the grounds for the removal; no heightened pleading is required. *See also* footnote 3 of this opinion.

Merrill Lynch contends that the confirmation of the Enron Plan does not preclude the exercise of "related to" bankruptcy here because the Enron officers and directors have already filed claims for contribution and indemnity relating to the Enron civil litigation and the confirmation plan deals with them, so they are connected to "the implementation or execution" of that plan. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001). Moreover, Merrill Lynch filed a proof of claim for

contribution[17] #21, Ex. B to Donch Declaration, encompassed within

"1.  Main Document")[18] directly against Enron in the bankruptcy

case which may "alter the debtor's rights, liabilities, options or

freedom of action . . . in [a] way [that] impacts upon the handling

and administration of the bankruptcy estate,"[19] and that even if it

is disallowed as a contingent claim, Merrill Lynch's expenditure

of funds in defending this suit establishes a contribution claim

at least for that.  Merrill Lynch also quotes from *New York City*

*Employees' Retirement System (In re WorldCom, Inc. Sec. Litig.)*,

293 B.R. 308, 323 (S.D.N.Y. 2003), *citing Belcufine v. Aloe*, 112

F.3d 633, 636-37 (3d Cir. 1997), to argue that even if the claim

is disallowed and thus contingent, there is a possibility under 11

---

[17] Plaintiffs note that a timely proof of claim is not
the only requirement for seeking a right of contribution from
Enron.  Nor was it asserted in the notice of removal, which
referenced only potential claims against former Enron officers,
which in turn might give rise to claims by those officers against
Enron or its D&O policies.

[18] The new proof of claim, filed October 21, 2004,
purportedly amended an earlier filed claim, No. 12628 dated
October 14, 2002, filed by Merrill Lynch in its capacity as a
named defendant in seven class action lawsuits relating to
prepetition conduct of Enron and asserting rights to
indemnification or contribution from Enron in the event that the
class action plaintiffs prevailed.  The earlier proof of claim
reserved its right to assert similar claims in any actions or
lawsuits subsequently filed.  The second, "supplemental" proof of
claim adds this action to the list of the seven earlier filed
class actions. Although Plaintiffs object that it asserts facts
that did not exist at the time of removal, the Court disagrees;
Merrill Lynch's supplementation of its rights to assert
indemnification claims in this lawsuit is based on essentially the
same prepetition conduct of the debtor that has been the subject
of Enron civil litigation all along.

[19] *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir.
1988).

U.S.C. § 502(g) that it might be reconsidered, and thus it supports
jurisdiction:

> Where a contingent claim is disallowed, it may
> be reconsidered when the contingency is
> "resolved." . . . Claims that are contingent
> today nonetheless have a "conceivable" effect
> on the bankruptcy. . . . Section 502(e)(1)(B)
> does not prevent a finding of jurisdiction in
> the case of contingent claims. . . . Whether
> or not a claim ultimately will be disallowed
> "is one for the bankruptcy court."

### Plaintiffs' Reply

In reply (#40), Plaintiffs point out that after
confirmation of the reorganization plan, there is no debtor estate
left to reorganize, and "related to" bankruptcy jurisdiction is
limited to implementing or executing the confirmed plan. *Craig's
Stores*, 266 F.3d at 390. The reorganization plan does not retain
jurisdiction over this suit. *In re Johns-Manville Corp.*, 7 F.3d
32, 34 (2d Cir. 1993). Nor does it affect the implementation or
execution of the confirmed Enron reorganization plan and must
therefore be remanded, insist Plaintiffs.

Plaintiffs argue that there is no "reasonable legal
basis" for the indemnification and contribution claims now that
the plan has been confirmed. Its contribution claims against
Enron, including Claim #12628 and any supplementation thereof, are
designated by the reorganization plan as Subordinated Claims
entitled to no distribution in Appendix Q of the Enron Disclosure
Statement for the Fifth Amended Plan of Affiliated Debtors, dated
January 9, 2004. Exs. A & B to #40, which reflect that there is

virtually no chance of recovery[20] based on the subordinated claims.[21] Section 17.1 of the reorganization plan subordinates any Enron officer claims.  Thus because Merrill Lynch's claims are subordinated or disallowed, they will have not impact the implementation or execution of the Enron reorganization plan in any manner sufficient to warrant the exercise of "related to" bankruptcy jurisdiction here.

## Court's Decision

An adversary proceeding does not have to sue the debtor or the debtor's property to meet the requirement to invoke "related to" bankruptcy jurisdiction; there need only be "some nexus between the 'related' civil proceeding and the title 11 case.'" *Rahl v. Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004), quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers*

---

[20] Plaintiffs demonstrate that an extensive computer analysis by Enron demonstrates that the subordinated claims have a predicted value of zero and that such claimants will not receive any money unless the two unsecured classes with higher priority receive a full recovery, which would be more than six times their value.

[21] Plaintiffs also argue that Merrill Lynch will not succeed in its direct claims against Enron because of Merrill Lynch's complicity in the alleged fraud, bolstered by the conviction of four Merrill Lynch executives in the criminal case dealing with manipulation of Enron's financial statements through the Nigerian barge transaction, and by Merrill Lynch's Non-Prosecution Agreement (Letter Agreement between the Department of Justice by the Enron Task Force and Merrill Lynch, Ex. G to #40) with the Justice Department accepting responsibility for these executives' wrongdoing and adopting new procedures to prevent such misconduct in the future.  Because Plaintiffs' conclusions are not final as a matter of law nor so adjudicated by a court, this Court will not base its decision on them, although they serve to bolster Plaintiffs' overall contention that there is no reasonable basis for retaining bankruptcy jurisdiction here.

(*In re Dow Corning Corp.*), 86 F.3d 482, 489 (6ᵗʰ Cir. 1996)(*quoting Pacor*, 743 F.2d at 994); *see also In re Adelphia Communications Corp.*, 307 B.R. 404, 414 (S.D.N.Y. 2004)("the proceeding need not necessarily be against the debtor or the debtor's property" to be "related to the bankruptcy.  An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").  "'A civil proceeding is related to a bankruptcy [even] where an action *between non-debtors* would affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could  alter the debtor's rights or liabilities.'"  *Urban Box Office Network, Inc. v. Interfase Managers, LP (In re Urban Box Office Network, Inc.*), No. 01 Civ. 8854 LTS THK, 2003 WL 22971510, *2 (S.D.N.Y. Dec. 18, 2003), *citing Geron v. Schulman (In re Manshul Construction Corp.)*, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998)(*citing In re Kolinsky,* 100 B.R. 695, 702 (Bankr. S.D.N.Y. 1989).

Prior to confirmation of a plan of reorganization, in the context of a potential indemnification claim in an adversary proceeding, courts in the Second Circuit, though not requiring a showing of "automatic liability," have required that a party seeking indemnification articulate "a reasonable legal basis for its indemnification claim"; failure to do so would fail to trigger "related to" bankruptcy jurisdiction. *In re Chateaugay Corp.*, 213

B.R. 633, 639-40 (S.D.N.Y. 1997), *citing Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157 (S.D.N.Y. 1995), and *Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28 (S.D.N.Y. 1994), *adhered to on reconsideration*, 177 B.R. 8 (S.D.N.Y. 1995). Now that the Enron reorganization plan has been confirmed, that determination whether there is a reasonable basis must take into account the effect of that confirmed plan.

There are substantial differences among the courts regarding the scope of bankruptcy jurisdiction after confirmation of a Chapter 11 reorganization plan. *Collier on Bankruptcy*, ¶ 1142.04, at 1142-6 (Lawrence P. King ed., 15th ed. 2000)("The extent to which the bankruptcy court can or should exercise post-confirmation jurisdiction is an issue that has long troubled the bankruptcy court system.").

A number of courts point out that 28 U.S.C. § 1334(b) has no language restricting subject matter jurisdiction following confirmation; therefore they require only that the post-confirmation claim fall within the broad scope of the bankruptcy court's original "related to" jurisdiction, i.e., the *Pacor* "conceivable effect" test. *See, e.g., U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999); *In re CF&I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998); *In re Xonics, Inc.*, 813 F.2d 127, 132 (7th Cir. 1987); Harold S. Novikoff and Beth M. Polebaum, *Post-Confirmation Issues: Ascertaining the Effective Date; Post-Confirmation Jurisdiction;*

*Serial Filing; Post Confirmation Litigation Vehicles*, SJ082 ALI-ABA 425, 434-35 (2004).

In contrast, the Fifth Circuit interprets the scope of post-confirmation jurisdiction very narrowly. In *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001), the appellate court rejected post-confirmation use of the "expansive" *Pacor* standard of exercising "related to" bankruptcy jurisdiction if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy"[22] in favor of a more "exacting theory of post-confirmation bankruptcy jurisdiction," because once a plan was confirmed, the debtor had emerged from bankruptcy and there was no estate left to administer. *Id.* at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").[23] *See* 11 U.S.C.

---

[22] *In re U.S. Brass*, 301 F.3d at 304.

[23] Courts in the Second Circuit follow suit. *See Falise v. American Tobacco Co.*, 241 B.R. 48, 58 (E.D.N.Y. 1999)("The confirmation of the plan in a Chapter 11 reorganization generally terminates the debtor's estate" unless otherwise provided in the plan), *citing Portfolio Lease Funding Corp. v. Seagate Tech., Inc. (In re Atlantic Computer Sys., Inc,)*, 163 B.R. 704 (Bankr. S.D.N.Y. 1994)("confirmation and substantial consummation of the Debtor's Joint Plan means this Debtor's estate no longer exits."). In litigation where the debtor is not a party, a court can still have "related to" bankruptcy jurisdiction as long as the suit has an impact on the bankruptcy estate. *Falise v. American Tobacco Co.*, 241 B.R. 48, 58, *motion to vacate denied*, 241 B.R. 63 (E.D.N.Y. 1999), *appeal dismissed*, 229 F.3d 1135 (2d Cir. 2000). After confirmation and substantial consummation of the plan, so that "there is presently no bankruptcy estate, there can be no continuing jurisdiction over that non-existent estate." *Id.*

§ 1141(b)(except as otherwise provided in the reorganization plan or confirmation order, "the confirmation of the plan vests all of the property of the estate" in the reorganized debtor and thus the bankruptcy estate no longer exists). In *Craig's Stores*, the Fifth Circuit affirmed the district court's conclusion that the bankruptcy court had no jurisdiction over a post-confirmation, state-law based contract dispute because the claims "principally dealt with post-confirmation relations between the parties," there was "no antagonism or claim pending between the parties as of the date of the reorganization," and "no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by Craig's against the Bank." *Id.* at 391.

In *In re U.S. Brass Corp.*, 301 F.3d 296 (5th Cir. 2002), the confirmed plan had expressly provided that certain claims would be resolved in a court of competent jurisdiction. Nevertheless the debtor asked the court to approve an agreement to liquidate those claims through binding arbitration. The insurers objected that the agreement was an impermissible modification of the confirmed plan. The Fifth Circuit supplemented its holding in *Craig's Stores* by concluding that there was post-confirmation jurisdiction over the debtor's motion because it not only affected the plan's implementation or execution, but also because the court had bankruptcy jurisdiction where "bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities" and "will certainly impact compliance with or completion of the reorganization plan";

thus the Fifth Circuit concluded that the motion related to the plan's implementation or execution. *Id.* at 305.

The Second Circuit, whose law this Court has previously held controls on the "related to" bankruptcy jurisdiction issues in this litigation, also recognizes the general rule that after confirmation of the reorganization plan, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. *Presidential Gardens Associates v. U.S. ex rel. Sec. of Housing and Urban Development*, 175 F.3d 132, 142 (2d Cir. 1999)("The 'related to' jurisdiction provision in 28 U.S.C. § 1334 does not normally survive the dismissal of the underlying bankruptcy proceedings."); *See also In re Haws*, 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993)("related to" bankruptcy jurisdiction depends upon whether the outcome of dispute could "in some way significantly affect consummation of the plan as confirmed."); *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 339 (N.D.N.Y. 2002)("[T]he basic theory of reorganization proceedings is that the debtor . . . has been rehabilitated by the plan so that it can carry on its business.   The corollary of this is that it and its creditors should work out their mutual rights and duties in the ordinary tribunals and should not forever continue under the tutelage of the bankruptcy court.'"), *quoting Butler v. Greater Pythian Temple Ass'n of New York*, 205 F.2d 621, 622 (2d Cir. 1953); *Rahl v. Bande*, 316 B.R. 127, 132-33 (S.D.N.Y. 2004)(A proceeding is related to a bankruptcy case when the outcome "'might have any

conceivable effect' on the bankrupt estate" or has a "significant connection" with the bankruptcy case; after a plan of reorganization has become effective, bankruptcy jurisdiction exists over a proceeding that is "not independent of the reorganization" and/or has "a significant connection" with it because the resolution of the dispute requires the interpretation of the plan of reorganization and the implementation of that plan."), *citing Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002). Under Second Circuit law, confirmation of the Enron reorganization plan has changed the scope of "related to" bankruptcy jurisdiction that this Court has over actions removed after confirmation.

Moreover, given the unrestricted language of § 1334(b), for jurisdiction to extend beyond confirmation the Second Circuit has highlighted the importance of a plan's jurisdiction-retention provision: "A bankruptcy court retains post-confirmation jurisdiction only to the extent provided in the plan of reorganization." *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). The Second Circuit is among courts that require such a jurisdiction-retention clause be included in the plan as a prerequisite for a post-confirmation assertion of jurisdiction by the bankruptcy court. *Id.* ("The bankruptcy court's post-confirmation jurisdiction therefore is defined by reference to the Plan. [citations omitted]"); *Falise v. American Tobacco Co.*, 241 B.R. at 58 ("Although jurisdiction is much more restricted after confirmation has occurred, a bankruptcy court can retain

jurisdiction as long as the plan or its confirmation provides such continuing jurisdiction . . . . Post-confirmation bankruptcy jurisdiction is defined by reference to the plan of reorganization. [citations omitted]"); *In re Almac's, Inc.*, 202 B.R. 648, 656 (D.R.I. 1996)("[A]lthough parties may not create jurisdiction by provision in a confirmed plan where it does not otherwise exist, many courts find the retention of jurisdiction to be a prerequisite to the adjudication of a post confirmation claim in bankruptcy court.")[24]; Harold S. Novikoff and Beth M. Polebaum, *Post-Confirmation Issues: Ascertaining the Effective Date; Post-Confirmation Jurisdiction; Serial Filing; Post Confirmation Litigation Vehicles*, SJ082 ALI-ABA 425, 433(2004).

Merrill Lynch, although it bears the burden of proving jurisdiction in this removed action,[25] has failed to identify any provisions in the confirmed plan that indicate retention of jurisdiction over the kind of claims it asserts.

The Court observes that Article 38.1(j) of the Enron reorganization plan ("to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any

---

[24] In comparison, the Fifth Circuit has stated that "the source of the court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan.  The source of the court's jurisdiction is 28 U.S.C. § 1334."  *In re U.S. Brass Corp.*, 301 F.3d at 303.

[25] *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 543 (5th Cir. 1990); *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 862 (2005).

Entity's obligations incurred in connection with or released under the Plan") and ¶ 60(j) of the confirmation order provide for retention bankruptcy jurisdiction generally over disputes concerning implementation or enforcement of the Plan. In *Falise*, 241 B.R. at 59, the plaintiffs argued that the following provisions in the reorganization plan supported continuing bankruptcy jurisdiction: (1) "To enforce and administer the provisions of the Plan . . . ."; (2) "To determine such other matters as may be provided for in the Confirmation Order . . . ."; (3) "To enforce all orders, judgments, injunctions and rulings entered in connection with the Cases"; and (4) "To enter such orders as may be necessary to appropriate in aid of confirmation and to facilitate implementation of the Plan." They also relied on a provision in the Confirmation Order providing jurisdiction "for such purposes as may be necessary or useful to aid the confirmation and consummation of the Plan and implementation of the Plan as provided in the Plan." *Id.* The *Falise* bankruptcy court observed, "To mandate that a plan actually demarcate those areas in which a bankruptcy court could not exercise post-confirmation jurisdiction would create a massive expansion in the jurisdictional grant while conflicting with section 1141(b). Requiring such language would run into severe tension with the constitutional and statutory limits placed on bankruptcy courts." *Id.* Thus although rejecting any requirement that a plan must provide a particularized listing of matters over which the bankruptcy court could not retain jurisdiction, the bankruptcy

court nevertheless found that "Plaintiffs' reliance on this amorphous language [of the above quoted provisions] in the Plan and Confirmation Order as a basis for continuing competence of the bankruptcy court is misplaced.   The language should be read narrowly to ensure that the bankruptcy court's role is appropriately as limited as is practicable after confirmation." *Id.*  This Court similarly finds the broad, indefinite language in the plan and confirmation order regarding retention of jurisdiction, is far too general to interpret as extending "related to" bankruptcy jurisdiction to cover potential claims for contribution and indemnification that arise from pre-petition transactions.

Moreover, as pointed out by Plaintiffs, contribution claims against Enron, including Claim #12628 and any supplement, are designated as Subordinated Claims, entitled to no distribution, in Appendix Q of the Enron Disclosure Statement for the Fifth Amended Plan of Affiliated Debtors, dated January 9, 2004, and that there is virtually no chance of recovery based on them.  Exs. A & B to #40.  Section 34.5 of the reorganization plan further provides:

> **<u>Indemnification and Reimbursement Obligations</u>**:
> For purposes of the Plan the obligations of the Debtors to indemnify and reimburse its directors or officers that were directors or officers, on or prior to the Petition Date shall be treated as Section 510 Subordinated Claims.

Section 17.1 of the reorganization plan states in relevant part that "each holder of an Allowed Subordinated Claim shall receive

no distribution for and on account of such Claim." The Court concludes that because Merrill Lynch's claims are thus subordinated under the confirmed plan, they cannot have an impact on the implementation or execution of the Enron reorganization plan sufficient to support the exercise of "related to" bankruptcy jurisdiction here.

The claims in the instant suit arose before confirmation, indeed pre-petition and, although they were not asserted until after confirmation, they deal with the relations between the parties and a dispute existing before confirmation. Under the Bankruptcy Code, "confirmation of a reorganization plan discharges the debtor from any debt that arose before the date of confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the holder of the claim." *In re Manville Forest Products Corp.*, 209 F.3d 125, 128 (2d Cir. 2000), *citing* 11 U.S.C. § 1141(d)(1). The Second Circuit has defined a "claim" as a "right of payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* ("under the current code, even contingent and unliquidated debts can constitute claims", *citing* 11 U.S.C. 1141(d)(1)). Merrill Lynch has failed to show why its purported contribution and indemnification claims were not "claims" within the definition of the Bankruptcy Code and were not discharged by the confirmation order.

Accordingly, for all these reasons, the Court

ORDERS that the motion to remand (#12) is GRANTED and this cases is remanded to the 193rd Judicial District Court of Dallas County, Texas.    Plaintiffs' motion for expedited consideration is MOOT (#72).    Defendants' motion to dismiss remains pending for a ruling by the state court.

**SIGNED** at Houston, Texas, this 25th day of July , 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE