IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE ENRON CORPORATION | § | |
| SECURITIES, DERIVATIVE & | § | MDL 1446 |
| "ERISA" LITIGATION | § | |
| UNICREDITO ITALIANO SPA and | § | |
| BANK POLSKA KASA OPIEKI SA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-0324 |
| | § | |
| J.P. MORGAN CHASE BANK, J.P. | § | |
| MORGAN CHASE & CO., J.P. MORGAN | § | |
| SECURITIES, INC., CITIBANK, | § | |
| N.A., CITIGROUP, INC., AND | § | |
| SALOMON SMITH BARNEY, INC., | § | |
| | § | |
| Defendants, | § | |
| DK ACQUISITION PARTNERS, L.P., | § | |
| KENSINGTON INTERNATIONAL | § | |
| LIMITED, RUSHMORE CAPITAL-I, | § | |
| L.L.C., RUSHMORE CAPITAL-II, | § | |
| L.L.C., AND SPRINGFIELD | § | |
| ASSOCIATES, L.L.C., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C.A. NO. H-03-3393 |
| | § | |
| JPMORGAN CHASE & CO., | § | |
| JPMORGAN SECURITIES, INC., | § | |
| CITIGROUP, INC., CITIBANK N.A., | § | |
| and CITIGROUP GLOBAL MARKETS, | § | |
| INC. f/k/a Salomon Smith Barney, | § | |
| Inc., | § | |
| | § | |
| Defendants, | § | |

AVENUE CAPITAL MANAGEMENT II,     §
L.L.P., GRACIE CAPITAL, L.P.,     §
HALCYON FUND, L.P., KING STREET   §
CAPITAL, L.P., LONGACRE MASTER    §
FUND, LTD., MAN MAC 3 LIMITED,    §
ORE HILL FUND HUB, LTD.,          §
MARATHON SPECIAL OPPORTUNITY      §
MASTER FUND, LTD., RCG CARPATHIA  §
MASTER FUND, LTD., REDWOOD        §
MASTER FUND, LTD., SCOGGIN        §
CAPITAL MANAGEMENT, L.P. II,      §
SCOGGIN INTERNATIONAL FUND, LTD.  §
SCOTTWOOD CAPITAL MANAGEMENT,     §
LLC, SPCP GROUP, LLC, STRATEGIC   §
VALUE CREDIT OPPORTUNITIES        §
MASTER FUND, L.P., STRATEGIC      §
VALUE MASTER FUND, LTD., and      §
TRILOGY CAPITAL, LLC,             §
                                  §
          Plaintiffs,             §
                                  §
VS.                               §     CIVIL ACTION NO. H-05-3031
                                  §
J.P. MORGAN CHASE & CO.,          §
JPMORGAN CHASE BANK, J.P. MORGAN  §
SECURITIES INC., CITIGROUP INC.,  §
CITIBANK, N.A., and CITIGROUP     §
GLOBAL MARKETS, INC. f/k/a        §
Salomon Smith Barney,             §
                                  §
          Defendants.             §


## OPINION AND ORDER

Pending before the Court in the above referenced, related

causes are two motions, *inter alia*,[1] that affect all three cases

---

[1] Also pending are (1) Plaintiffs DK Acquisition
Partners, L.P., Kensington International Limited, Rushmore Capital-
I, L.L.C., Rushmore Capital-II, L.L.C., and Springfield Associates,
L.L.C.'s motion for partial summary judgment (instrument #153 in
H-03-3393), joined by *Avenue Capital* Plaintiffs (#159 in H-05-

("Bank Debt Cases"): (1) in H-04-0324 (#158) Plaintiffs Unicredito Italiano SpA and Bank Polska Kasa Opieki's (collectively, "*Unicredito* Plaintiffs'") motion for recommendation of remand and (2) in H-03-3393 (#217) and in H-05-3031 (#148) Defendants' motion to change venue to Southern District of New York under 28 U.S.C. § 1404(a).[2]  Plaintiffs in H-03-3393 (#224) and H-05-3031 (#155) have also moved for a hearing to establish a schedule for resolving these and other pending motions.

Because the Court finds that a hearing is not necessary, it denies the motions for a hearing.  Moreover, after reviewing the briefing on all motions, for reasons indicated below, the Court concludes that *Unicredito* Plaintiffs' motion for recommendation of remand should be granted.  Furthermore, conditioned upon subsequent agreement and order of the Judicial Panel for Mulitdistrict

---

3031); (2) joint motion for trial setting (#210 in H-03-3393 and #143 in H-05-3031); and (3) Citigroup and JPMorgan Chase Defendants' motions for judgment on the pleadings (#220 in H-03-3393 and #151 in H-05-3031).

[2]   *Unicredito* was transferred to this Court by the Judicial Panel for Multidistrict Litigation for all pretrial proceedings.
    *DK Acquisition* was filed in the 152nd District Court of Harris County, Texas, was removed to this Court on the grounds that it was "related to" Enron's bankruptcy under 28 U.S.C. §§ 1334(b) and 1452, and was subsequently coordinated with *Newby* by the undersigned judge.
    *Avenue Capital* was originally filed in this Court based on "related to" bankruptcy jurisdiction, under 28 U.S.C. § 1334, and then coordinated by this Court with *Newby*.  *DK Acquisition* and *Avenue Capital*'s pretrial proceedings are not complete, as is evidenced by pending motions for partial summary judgment, for judgment on the pleadings, and for trial setting.

Litigation to remand H-04-0324 to the Southern District of New York, the Court grants Defendants' motion to change venue of H-03-3303 and H-05-3031 to the United States District Court for the Southern District of New York.   The remaining motions shall be decided by that district court if the Judicial Panel remands *Unicredito* and *DK Acquisition* and *Avenue Capital* are accordingly transferred.

**I.  Background**

On May 18, 2000 and May 14, 2001, Enron Corporation entered into three credit facilities with syndicates composed of more than fifty banks, both American and foreign, including Defendants here.   Among the syndicate members, Citigroup and JPMorgan Chase had the largest individual commitments of all the lenders and they each served as co-administrative agents for the facilities.   The three credit facilities are (1) a five-year, $1.25 billion revolving credit facility; (2) a 364-day, $1.75 billion revolving credit facility; and (3) a $500 million letter of credit facility.   JPMorgan Chase was the issuing bank and the paying agent for the 2001 letter of credit facility, while Citibank was the paying agent for the 2000 and 2001 credit facilities.   The first two credit facilities were established to backstop Enron's commercial paper program if Enron had an emergency need to redeem its outstanding commercial paper (either because Enron had a liquidity problem or there was a crisis in market confidence,

neither of which the parties to the facilities expected would unfold).  These two credit facilities were not funded until October 25, 2001, when Enron suddenly drew down the full $3 billion available under them.  The $500 million letter of credit facility, was used by Enron on occasion; it had presented and drawn down $374 million worth of letters of credit that remained unreimbursed when it filed for bankruptcy on December 02, 2001.

Shortly after Enron filed for bankruptcy, the *Unicredito* Plaintiffs, two original lenders from the bank syndicate, filed the first suit in February 2002.

*DK Acquisition* and *Avenue Capital* Plaintiffs are distressed debt funds that purchased in the secondary market for commercial debt the debt held by other original lenders which had extended credit to Enron under the three credit facilities.  These Plaintiffs assert that they acquired the original lenders' right to collect and right to sue under the facilities by assignments or "participations" and that they stand in the shoes of these lenders. They now sue Defendant banks for wrongful conduct in connection with the loans made by Plaintiffs' predecessors-in-interest, i.e., the lenders, to Enron that assisted Enron in perpetrating its scheme of corporate fraud, concealing its debt and overstating its cash flow.[3]  They assert that because they cannot collect the debt

---

[3] The complaints point to Defendants' transactions with the LJM partnerships, prepays used to disguise loans to Enron, and assistance in preparing and presenting Enron's fraudulent financial

from now bankrupt Enron, Defendants are liable to them for that debt because of their knowing assistance to Enron in perpetrating the fraud.

## II.  Applicable Law

### A.  Remand under 28 U.S.C. § 1407

Section 1407 controls the transfer and remand of cases in the multidistrict litigation sent to this Court by the Judicial Panel, including the *Unicredito* action:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote such just and efficient conduct of such actions. *Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however,* That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

28 U.S.C. § 1407(a)(emphasis added).  "Remand is thus mandatory if (1) the case has not been previously terminated and (2) coordinated

---

statements and in obtaining falsely inflated credit ratings.  The lenders allegedly relied on the false information about Enron's financial condition in entering into the credit agreements and making funds available under them.

or consolidated pretrial proceedings have concluded.  In all other cases it is discretionary." *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 37 (D.D.C. 2007).  "[Pre-trial proceedings do not conclude until a final pretrial order is entered, and . . . all prior proceedings-including rulings on motions for summary judgment-are pretrial proceedings that may properly remain before the transferee court." *Id., citing Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32 (1998); *In re Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 138 F.3d 695, 697 (7th Cir. 1998); and *In re Patenaude*, 210 F.3d 135, 144-45 (3d Cir. 2000), *cert. denied*, 531 U.S. 1011 (2000).

Judicial Panel Multidistrict Rule 14(c) states that in the absence of unusual circumstances,

> The Panel shall consider remand of each transferred action or any separable claim, cross-claim, counterclaim or third-party claim at or before the conclusion of coordinated or consolidated pre-trial proceedings on
> (I) motion of any party,
> (ii) suggestion of the transferee district court, or
> (iii) the Panel's own initiative, by entry of an order to show cause, a conditional remand order or other appropriate order.

28 U.S.C. foll. § 1407.  "[A] determination that coordinated or consolidated pretrial proceedings have concluded and that remand is therefor appropriate is necessarily case-specific."  *In re Patenaude*, 210 F.3d at 141.

In *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-35 (1998), the Supreme Court concluded that § 1407(a) requires the Judicial Panel on Multidistrict Litigation "to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *See In re William Lee Roberts*, 178 F.3d 181, 184 (3d Cir. 1999)(holding that "[t]he statutory power to order a remand under § 1407(a) from the transferee district to the transferor district lies in the Panel, not the transferee district judge."); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 36 (D.D.C. 2007)("Only the MDL Panel may remand a case or cases transferred under § 1407."). Furthermore, under Rule 7.6(c), "The Panel is reluctant to order remand absent a suggestion of remand from the transferee district court," and the Panel usually gives a transferee court's suggestion of remand considerable weight under Rule 7.6(d). *Hockett*, 498 F. Supp. 2d at 36; *see also In re Patenaude*, 210 F.3d 135, 141 (3d Cir. 2000), *cert. denied*, 531 U.S. 1011 (2000), *citing In re King Resources Co. Securities Litig.*, 458 F. Supp. 220, 222 (Jud. Pan. Mult. Lit. 1978).

## B.   Transfer under § 1404(a)

Title 28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The movant seeking a

change of venue bears the burden of demonstrating by a preponderance of the evidence that a transfer is warranted under the circumstances.[4]   *Southeastern Consulting Group, Inc. v. Maximus, Inc.*, 387 F. Supp. 2d 681, 684 (S.D. Miss. 2005).

In addition to the requisite finding that the case could have been brought in the proposed transferee forum, in deciding whether to transfer an action, a court must consider and balance a number of private and public factors, none of which, by itself, is dispositive.  *In re Volkswagen of America, Inc.*, __ F.3d ___, ___, No. 07-40058, 2007 WL 3088142, *3 (5th Cir. Oct. 24, 2007).

The private interest factors include (1) the relative ease of access to sources of proof,[5] (2) the availability of compulsory process to secure the attendance of witnesses,[6] (3) the cost of attendance for willing witnesses, and (4) all the practical

_____

[4] Plaintiffs argue that Defendants must demonstrate that the balance of convenience and justice *substantially* weighs in favor of transfer, but the Fifth Circuit has recently clarified that that "*substantially*" does not apply to venue transfers, but to transfers under the doctrine of forum non conveniens.  *In re Volkswagen of America, Inc.*, ___ F.3d ___, ___, No. 07-40058, 2007 WL 3088142 3088142, **3-7 (5th Cir. Oct. 24, 2007)("A party seeking a transfer 'must show good cause,'" i.e., only that the transfer is "'[f]or the convenience of parties and witnesses in the interest of justice.'").

[5] Recent advances in copying technology and information storage have made this factor a lesser inconvenience, but not superfluous.  *Id.* at *7.

[6] Convenience of the parties is given less weight than convenience of non-party witnesses.  *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002)

problems that make trial of a case easy, expeditious and inexpensive.  *Id.*

The public interest factors are (1) the administrative difficulties caused by court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.  *Id.*

The plaintiff's choice of forum is also a factor to be weighed.  *Id.*  "'At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.'"  *Id.*, *quoting Times, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)(a plaintiff's choice of forum is to be treated "as a burden of proof question rather than one of a presumption.").  Plaintiff's choice of forum is entitled to deference, so a party seeking a transfer must show good cause, i.e., that the transfer is "[f]or the convenience of the parties and witnesses, in the interests of justice."  *Id.* at *7, *citing Humble Oil*, 321 F.2d at 56.[7]  "When the transferee forum is no more convenient than the chosen forum,

---

[7] The panel emphatically rejected application to the § 1404(a) venue-transfer analysis of the stricter dismissal standard for forum non conveniens, i.e., that the movant must show that the balance of convenience and justice *substantially* weighs in favor of transfer.  2007 WL 3088142 at *3-4.

the plaintiff's choice should not be disturbed.  When the
transferee forum is clearly more convenient, a transfer should be
ordered." *Id.*  Some courts in the Fifth Circuit have held that a
plaintiff's choice of forum has less weight where the plaintiff
does not reside in the chosen forum and where most of the operative
facts have not occurred in that forum.  *See, e.g., Glazier Group,
Inc. v. Mandalay Corp.*, No. Civ. A. H-06-2752, 2007 WL 2021762, *15
(S.D. Tex. July 11, 2007)(and cases cited therein); *Shoemake v.
Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 830-31 (E.D. Tex.
2002).

## C.  First-To-File Rule

The Fifth Circuit follows a first-to-file rule which
states, "[W]hen related cases are pending before two federal
courts, the court in which the case was last filed may refuse to
hear it if the issues raised by the cases substantially overlap."
*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.
1999); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950
(5th Cir. 1997).  The rule "is grounded in principles of comity and
sound judicial administration," and "'the principle of comity
requires federal district courts--courts of coordinate jurisdiction
and equal rank--to exercise care to avoid interference with each
other's affairs.'"  *Save Power*, 121 F.3d at 950, *quoting West Gulf
Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir.
1985).  The purpose of the rule is "'to avoid the waste of

duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* The rule does not require that the issues or the parties be identical. *Save Power*, 121 F.3d at 950, 951. The key question is whether there is substantial overlap between the two cases. *Id.* Where the overlap is not total, the court in which the later or last suit was filed no longer may decide whether the actions should be allowed to proceed, but must transfer the case to the court of the first filed action for it to determine the outcome of the later-filed action, i.e., whether the cases should be consolidated or dismissed. *Id.* at 950-51.

**III.  Unicredito Plaintiffs' Motion for Recommendation of Remand and Defendants' Motions to Change Venue**

In their motion for recommendation of remand, *Unicredito* Plaintiffs ask the Court to recommend to the Judicial Panel on Multidistrict Litigation that the action, pending since February 2002,[8] be remanded to the United States District Court for the

---

[8] The first Bank Debt Case, *Unicredito*, was originally filed in federal court in Delaware in February 2002 and was transferred in July 2002 to the Southern District of New York upon Defendants' motion. Discovery commenced. In December 2003 the Judicial Panel on Multidistrict transferred the case to this Court for coordination with MDL 1446, in particular with subsequently filed Bank Debt Cases H-03-3393 and H-05-3031 and another suit that was since settled and dismissed (H-04-2154, *Bayerische Landesbank, et al. v. JPMorgan Chase Bank, et al.*). *Unicredito* Plaintiffs seek remand of *Unicredito* and Defendants seek transfer of *DK Acquisition* and *Avenue Capital Management* to keep the three together.

Southern District of New York because fact discovery here ended in November 2005, expert discovery ended in December 2006, the case is trial-ready, and all the claims are under New York common law.

Defendants support Plaintiffs' motion for remand on the condition that the Court also grant their motion to transfer the other two cases to the Southern District of New York. Defendants argue that the Bank Debt Cases should remain together for rulings on dispositive motions and for trial because they concern the same credit agreements, are brought by Plaintiffs that were either syndicate members in those agreements or are parties who stand in the shoes of such syndicate members (i.e., DK Acquisition and Avenue Capital Plaintiffs[9]), and assert essentially the same factual allegations and causes of action. Thus keeping them together would avoid repetitive litigation, waste of judicial resources, and the risk of inconsistent rulings on the same issues. Moreover, Judge Laura Taylor Swain of the United States District Court of the Southern District of New York is familiar with the issues, having previously heard oral arguments and ruled on dispositive motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b) in the *Unicredito* suit. *Unicredito*

---

[9] According to Defendants the *DK Acquisition* Plaintiffs and the *Avenue Capital* Plaintiffs "are 22 distressed debt funds that purchased the interests of almost all the other original syndicate banks at deeply discounted prices after Enron entered bankruptcy and brought suit against defendants in 2003 and 2005 respectively." #160 at 2.

*Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485 (S.D.N.Y. 2003).[10]

## IV.  Court's Determination

Because the parties' positions have been modified as this litigation proceeded, the Court only addresses those arguments still relevant to the instant motions.

Having read all submissions related to these motions, the Court agrees with Defendants that these three cases are closely related with substantial overlap of key issues.  It also finds that pretrial proceedings in *Unicredito*, H-04-0324 have been completed,[11]

---

[10] The *Unicredito* suit is based on the same allegations as the other Bank Debt Cases.  In this opinion, Judge Swain, ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b), first determined that New York law applied because the credit agreements for the credit facilities so specified and because in their arguments the parties presumed that it applied.  288 F. Supp. 2d at 497.  She then dismissed Plaintiffs' claims for fraud, fraudulent concealment, misrepresentation, negligent misrepresentation, and unjust enrichment against Defendants in their roles as co-administrative and paying agents under the credit facilities because the credit agreements, which waived Defendants' responsibility to inquire about the borrower's performance of any terms, covenants or conditions of any loan document and to make disclosures to participant banks about Enron's financial risks, made it impossible for Defendant Banks to establish the essential elements of these causes of action (a duty to disclose and reasonable reliance by Plaintiffs on alleged misrepresentations). *Id.* at 497-98, 504.  Judge Swain determined that the express disclaimers in the credit agreements also barred claims for breach of implied duty of good  faith to the extent that the claims were based on the alleged fraud.  *Id.* at 502-03.  She further concluded that Plaintiffs had stated a claim for aiding and abetting Enron in its fraudulent accounting scheme and civil conspiracy.  *Id.* at 502, 504.

[11] While dispositive motions remain pending in *DK Acquisition* and *Avenue Capital*, this Court agrees with Defendants

-14-

the case is ready for trial, and that a recommendation of remand
to the Judicial Panel under Rule 7.6 of the Rules of Procedure of
the Judicial Panel on Multidistrict Litigation is appropriate.
Because the *Unicredito* action was originally filed in the Southern
District of New York and transferred by the Judicial Panel on
Multidistrict Litigation, it must be returned there for trial,[12] so
if the cases should remain together, the two later filed Bank Debt
cases should be transferred to the same court.

There is no disagreement that the two actions could have
been originally brought in the Southern District of New York, where
all Defendants have offices, do business, and reside.  28 U.S.C.
§ 1391(b)(1)(In an action where jurisdiction is not founded solely
on diversity of citizenship,[13] suit may be brought in "a judicial
district where any defendant resides, if all defendants reside in

_____

that these motions optimally should be resolved by the same court
to avoid inconsistent rulings on issues common to all three cases
and to conserve judicial time and effort.  The Court has
deliberately not required a pretrial order to be filed in
*Unicredito* prior to remand because the procedures of different
courts vary and the trial court should impose its requirements.

[12] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26, 28 (1998), the Supreme Court concluded that § 1407(a)
requires the Judicial Panel on Multidistrict Litigation "to remand
any pending case to its originating court when, at the latest,
those pretrial proceedings have run their course" and does not
authorize the district court conducting the pretrial proceedings
to assign a transferred case to itself for trial.

[13] Jurisdiction in both *DK Acquisition* and *Capital Avenue*
was based on "related to" bankruptcy jurisdiction under 28 U.S.C.
§ 1334(b).

the same State."); *Rice Co. (Suisse) S.A. v. James J. Flanagan Shipping Corp.*, No. H-06-965, 2006 WL 2981194, *1 (S.D. Tex. Oct. 16, 2006)(a transfer of venue is proper where (1) the action could have been brought in the transferee court and (2) the transfer would serve the convenience of parties and witnesses and the interests of justice.).

As discussed below, the Court finds that under the particular circumstances here, both the majority of relevant significant public and private interest factors in analysis for venue change under § 1404(a) and the first-filed case rule[14] favor the transfer of the two related cases, *DK Acquisition* and *Avenue Capital*, to the District Court of the Southern District of New York where the litigation will proceed more conveniently and the interests of justice will be better served by coordinated and consistent treatment of the three Bank Debt cases by that same court, as it sees fit.

The Court therefore addresses the balance of private interest factors under § 1404(a), and then the public interest factors to support its determination that a change of venue is appropriate if the Judicial Panel remands *Unicredito*.

_____

[14] As noted, under the first-filed case rule "'the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'" *Cadle*, 174 F.3d at 606, *citing Save Power Ltd. v. Synteck Fin. Corp.*, 121 F.3d 947, 948, 950 (5th Cir. 1997.

The relative ease of access to sources of proof is neutral here, given the advances in copying technology and information storage. *In re Volkswagen of America, Inc.*, ____ F.3d ____, ____, No. 07-40058, 2007 WL 3088142 at *7.

In light of Federal Rule of Civil Procedure 45(c)(3)(A)(ii)("On timely motion, the issuing court must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person . . . ."), the second and most important factor is the availability of compulsory process to secure the attendance of witnesses at trial. While the parties do not agree on which witnesses are "key," both sides point to New York has having subpoena power over the largest number, and/or the non-party witnesses in Texas named by Plaintiffs have voluntarily agreed to appear at trial.

"The availability and convenience of witnesses is arguably the most important of the factors § 1404 analysis. . . . To support a motion to transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony. . . . . 'The convenience of one key witness may outweigh the convenience of numerous less important witnesses.'" *Carr v. Ensco Offshore Co.*, Civ. A. No. G-06-629, 2007 WL 760367, *2 (S.D. Tex. 2007). *See also Continental Airlines, Inc. v. Am. Airlines,*

*Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992)("[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses. . . . Thus 'the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their witnesses will cover.'"), *quoting* 15 Wright, Miller and Cooper, Fed. Prac. & Proc. § 3851 at 415 (1986). "The moving party must do more than make a general allegation that certain key witnesses are needed. The movant must specifically identify the key witnesses and outline the substance of their testimony." *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993).

Plaintiffs have pointed to Defendants' former employees, non-parties who reside in this district and whose testimony cannot be compelled outside this district, as a reason not to transfer the two actions to New York. Specifically Plaintiffs name JP Morgan employees Richard Walker, Robert Traband, George Serice, and Mark Shapiro and Citibank employees Shirley Elliot Burrow and James Reilly.

Defendants disagree with Plaintiffs' assertion that the majority of Defendants' current and former employees who were deposed reside in Houston; they submit lists demonstrating that 29 of JPMorgan's deponents live and/or work in the New York area and only eight in the Houston area, while 20 Citibank deponents live and/or work in the New York area and only five in the Houston area.

-18-

Furthermore, regarding the four JPMorgan Chase witnesses (Richard Walker, Robert Traband, George Serice, and Marc Shapiro) and two Citibank witnesses (Shirley Elliot Burrow and James Reilly) named by Plaintiffs, Traband and Reilly remain employees of the respective banks and can therefore be required by Defendants to testify at trial in New York and counsel for all the others have represented to Defendants that these individuals will make themselves available for trial in New York if these cases are transferred.  Defendants further assert that scores of non-party witnesses, including credit officers and relationship managers employed by the more that fifty syndicate lender banks, are key witnesses in *DK Acquisition* and *Avenue Capital* for proving elements of Plaintiffs' fraud claims:  reasonable reliance by each Plaintiff on what information Defendants gave to them and the knowledge of each Plaintiff of Enron's actual financial situation that allegedly was only within Defendants' knowledge and which Defendants had a duty to share with them.  *See* attachments listing potential witnesses and their places of residence (#165 in H-04-324; #230 in H-03-3393; #159 in H-05-3031) and in their response (#160 at 14-16 in H-04-324; #217 in H-03-339; and #148 in H-05-3031), identifying a few key bankers who would be called by Defendants and providing a brief summary of their expected testimony.  They suggest that all ninety-five witnesses from Plaintiffs' predecessors-in-interest that were deposed are likely to be trial witnesses, and only

fifteen are subject to this Court's subpoena power, while 57 are subject to that of Judge Swain in the Southern District of New York. Similarly they state that the debt held by Plaintiffs from the original lenders whose witnesses are subject to the subpoena power of the Southern District of New York is about $1.2 billion, or 58% of Plaintiffs' holdings, in contrast to those in Texas whose witnesses hold $493 million or 23% of Plaintiffs' holdings. The majority of Plaintiffs representatives that were deposed in these suits reside in New York or Boston, while none lives in Texas. Furthermore, none of the parties has a principal place of business in Texas. Plaintiffs are partnerships set up under the laws of Delaware or offshore jurisdictions, but most are based in New York.

Thus the Court finds that this factor favors transfer to the Southern District of New York.

Regarding the third factor, the cost of attendance for willing witnesses, because Plaintiffs can easily afford to send the few witnesses in Houston and with the location of the majority of identified witnesses in or near New York, time and expense would be minimized if the cases were transferred to the Southern District of New York. None of the parties has a principal place of business in Texas, while the majority of syndicate banks allegedly defrauded by Defendants have their United States headquarters in New York, as to Defendants, and Plaintiffs are partnerships registered in New

York, as well as in Massachusetts, Delaware and some offshore locations.

Fourth, as to practical problems that make trial of a case easy, expeditious, and inexpensive, other than the lesser expense involved in having the majority of witnesses appear in the New York forum, the parties have not persuasively shown that either forum offers a significant advantage over the other.

The first public interest factor is administrative difficulties created by court congestion. Courts in this circuit have recognized that "maintenance of two suits arising from the same occurrences in two separate courts" gives rise to the kind of congestion that a § 1404 transfer was intended to eliminate and justifies transfer. *Devon Energy Prod. Co., L.P. v. GlobalSantaFe South America*, Civ. A. H-06-2992, 2007 WL 1341451, *8 (S.D. Tex. May 4, 2007); *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.3d 523, 529 (5th Cir. 1988).

Second, regarding local interest in having localized interests decided at home, as pointed out by the parties, none of them is headquartered in Texas, while all have a strong business presence in New York. As to the place of occurrence of the fraudulent conduct, Plaintiffs maintain that the negotiation and drafting of the credit facilities, Defendants' creation and negotiation of the prepays and other structured finance transactions used to perpetrate Enron's fraud, communications with

-21-

Enron demonstrating Defendants' knowledge of the fraud, circumstances leading to the draw down of the credit facilities, and the financial collapse of Enron all took place in the Southern District of Texas.   Nevertheless the Court finds that Defendants persuasively argue that the majority of the original lenders, most being foreign banks, have their United States headquarters in New York, from which they managed their involvement in the Enron lending syndicates and where the employees with knowledge are located.   While Enron's misconduct occurred largely in Houston, neither Enron nor its former employees, executives or directors are defendants in the Bank Debt cases.   Rather these actions are disputes among banks and successors-in-interest to certain banks relating to the obligations of administrative and paying agents under the terms of syndicated credit agreements.   As the financial capital of the United States, New York has a strong public interest in adjudicating these actions.   Defendants have noted that New York law applies to the breach of contract claim based on the credit agreements according to the express terms of those agreements, and to the duties owed by the syndicate banks as co-administrative agents and paying agents under these contracts.   This Court agrees and finds that this factor further supports transfer.

        Third, regarding familiarity of the court with the law(s) that govern(s) the causes of action, the parties agree that New York law governs the contract claims and  that the law applicable

-22-

to the other causes of action has not yet been raised, no less decided.   This Court believe that both courts would be fully capable of applying either New York or Texas law to the issues in these cases.

Regarding the fourth factor, avoidance of unnecessary problems of conflicts of law or in the application of foreign law, the Court finds that the parties have not demonstrated that either would be a difficulty here.

As for Plaintiffs' choice of forum, because Plaintiffs are not headquartered in Texas nor residents of Texas, their choice of Texas as a forum should be of even less weight than otherwise. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 830-31 (E.D. Tex. 2002); *Bose Corp. v. Sunshine Electronics of New York, Inc.*, No. 03:05-CV-252-L, 2006  WL 1027684, *8 (N.D. Tex. Apr. 12, 2006)("Where the plaintiff brings suit outside its home district, a plaintiff's choice of forum has reduced significance and is given less weight."). Moreover, this Court observes that Plaintiffs have not explained why they chose to file *DK Acquisition* and *Avenue Capital* not only in a different forum than that of the first Bank Debt case, but in different courts here in Texas, triggering the possibility of three inconsistent rulings.

Accordingly, for the reasons set out above, the Court

ORDERS that the motions for hearing (#224 in H-03-3393 and #155 in H-05-3031) are DENIED.  The Court further

ORDERS that Unicredito Italiano SpA and Bank Polska Kasa Opieki's motion for recommendation of remand (#158 in H-04-0324) is GRANTED; the recommendation will issue by separate instrument. In addition, the Court

ORDERS that Defendants' motions to change venue to Southern District of New York H-03-3393 (#217) and in H-05-3031 (#148) are granted, provided that the Judicial Panel remands *Unicredito*. Until the Panel issues its decision, *DK Acquisition* and *Avenue Capital* are STAYED.

**SIGNED** at Houston, Texas, this 10th day of December, 2007.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE